[Civ. No. 4418. Fifth Dist. Aug. 16, 1979.]

GLORIA PENA, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE TULARE-PIXLEY JUDICIAL
DISTRICT OF TULARE COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Walter L. Gorelick, Public Defender, Jesse J. Avila, Deputy Public Defender, Randall C. Lyon and Richard Barron for Plaintiff and Appellant.

Hugh R. Manes as Amicus Curiae on behalf of Plaintiff and Appellant.

No appearance for Defendant and Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

**ZENOVICH, J.**—Appellant Gloria Pena was charged with making a false report of a criminal offense to a police officer (Pen. Code, § 148.5) by a complaint filed in Tulare County Municipal Court on June 12, 1978. Appellant moved to dismiss the complaint on the grounds of discriminatory prosecution alleging the complaint was filed solely because she had filed a grievance with the chief of police charging that officers who had arrested her for an offense had used excessive force and had not returned $25 following her release. The municipal court held appellant had failed to make a prima facie showing of discrimination and denied the motion.

Appellant filed a petition for a writ of mandate or prohibition in the Tulare County Superior Court alleging the municipal court had abused its discretion because she had demonstrated sufficient discrimination. The superior court held there had been an inadequate showing of discrimination in the trial court and that therefore the trial court had not abused its discretion by denying appellant's motion.

Appellant filed a timely notice of appeal.

On March 8, 1978, at approximately 2 a.m., Tulare police officers, responding to a disturbance report at a cafe, arrested appellant's husband and another man for being intoxicated in public and disturbing the peace.

According to the police reports and statements of the waitress who was working at the cafe, appellant then became very abusive towards the waitress and the police officers. Following a warning by the officers, she was placed under arrest. While being placed under arrest, she became violent and kicked at the officers.

Appellant's version of the incident, as contained in her April 14, 1978, grievance letter to the chief of police, was that she was leaving the cafe following the arrest of her husband when an officer grabbed her by the arm, used abusive language towards her and hit her. After being placed under arrest, the officers used excessive force in placing her in the patrol car and at the police station, ransacked her purse, refused to allow her to make a phone call or contact her doctor, and pulled her by the hair and threw her into a cell.

On May 18, 1978, appellant was found not guilty on the charges of being under the influence of intoxicants in a public place (Pen. Code, § 647, subd. (f)) and a mistrial was declared as to the charge of disturbing the peace (Pen. Code, § 415).

The police department's investigation of appellant's grievance letter concluded there was no basis for crediting appellant's complaint, according to a report filed on May 26, 1978.

The only grounds for dismissal appellant argued in the trial court were contentions that she was the victim of discriminatory prosecution because she had filed a grievance with the chief of police, and that she was therefore entitled to discovery on the issue of selective prosecution after establishing a prima facie showing on the claim of discrimination. The trial court denied appellant's motion for dismissal, concluding appellant had not made a showing of discrimination.

In seeking a writ of mandate to compel the trial court to dismiss the action, and on appeal to this court, appellant raised issues other than those raised in the trial court, including contentions that the communication appellant sent to the police chief was statutorily and constitutionally privileged, and that Penal Code section 148.5 does not include a citizen's complaint under the definition of a "report" in that section. However, the decision of the superior court in denying appellant's petition for a writ was clearly based solely upon a review of those grounds raised in the trial court.

■ Statutes and rules applicable to appeals also apply to petitions for a writ of mandate, except when they are inconsistent with the rules and statutes specifically applicable to writs. (Code Civ. Proc., § 1110.)

■ Generally, points and issues not raised in the trial court may not be raised on appeal for the first time. (See, e.g., *Roberts* v. *Roberts* (1966)

241 Cal.App.2d 93, 98 [50 Cal.Rptr. 408]; *Overgaard* v. *Johnson* (1977) 68 Cal.App.3d 821, 826 [137 Cal.Rptr. 412].) However, when the facts relating to the contention raised on appeal appear to be undisputed and there would probably be no contrary showing at a new hearing, the appellate court may properly treat the contention as a question of law and pass on it accordingly. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *Williams* v. *Mariposa County Unified Sch. Dist.* (1978) 82 Cal.App.3d 843, 850 [147 Cal.Rptr. 452].) This is particularly true when the new issue is of "considerable public interest" or concerns "important issues of public policy" and has been briefed and argued before the reviewing court. (See *Wong* v. *Di Grazia* (1963) 60 Cal.2d 525, 532, fn. 9 [35 Cal.Rptr. 241, 386 P.2d 817]; *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 4-5 [97 Cal.Rptr. 431].)

We are of the opinion that this case falls within such an exception. It involves the applicability of Penal Code section 148.5 to what is essentially a citizen's grievance and is a case of first impression. Both sides have briefed this issue in the superior court, and there is also an amicus curiae brief and a supplemental brief by the respondent to answer contentions brought forward by the amicus curiae.

■ Therefore, the issue before us is whether a citizen's complaint alleging police officer misconduct can be considered a false report of a criminal offense within the meaning of Penal Code section 148.5.

Appellant's contentions on this point involve two basic arguments. First, that a citizen's grievance complaining of misconduct by police officers does not fall within the scope of "reports to any police officer . . . that a felony or misdemeanor has been committed, knowing such report to be false, . . ." as prohibited by Penal Code section 148.5. Second, appellant contends that a construction that so included such a citizen's grievance under the section would infringe upon constitutional rights, primarily the right to petition the government for redress of grievances and the right of free speech.

To a great extent these two contentions overlap because rules of statutory construction require that a statute be interpreted consistent with constitutional provisions whenever possible. (45 Cal.Jur.2d (1958) Statutes, § 115, pp. 624-625.)

We are of the opinion that the Legislature did not intend for citizens' complaints of police misconduct made to the police chief or other governmental officers to be considered as a report of a criminal offense under Penal Code section 148.5. A common sense reading of the section itself suggests that the section is intended to deter false reports of crimes and the resulting inconvenience and danger to other members of the public, such as that in *People* v. *Rainey* (1964) 224 Cal.App.2d 93 [36 Cal.Rptr. 291]. This interpretation is supported by the fact Penal Code section 148.5 is one in a series of sections designed to prevent false reports to those responsible for police and fire protection and other emergency services. (Cf. Pen. Code, §§ 148.1—false report of secretion of explosive or bomb; 148.3—false report of emergency; 148.4—false fire alarms.)

Furthermore, we are of the opinion that the Legislature—through the adoption of Penal Code section 832.5 mandating that law enforcement agencies in the state establish a procedure to investigate citizens' complaints against their officers—has indicated its desire that complaints such as that filed by appellant with the chief of police in this case are to be encouraged.

The courts have held that a citizen's complaint of police misconduct is privileged so as to preclude a civil libel action by the officer against the complaining citizen. (*Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 55 [138 Cal.Rptr. 540].) The public policy considerations expressed in *Imig* to bar a civil action on a citizen's grievance are equally applicable to a criminal action based on the contents of such a complaint:

"The policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing. . . .

". . . We agree with plaintiff that it is distressing and demoralizing for police officers to be subjected to false accusations of brutality, but that may be one of the crosses that a police officer must bear, in light of the power and deadly force the state places in his hands." (*Imig* v. *Ferrar, supra,* at pp. 55-56.) These policy reasons are applicable even if they sometimes have the incidental effect of providing immunity to the "malignant slanderer." (*Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918, 925 [148 Cal.Rptr. 242].) The importance of providing channels to assure "utmost freedom of communication between citizens and public authorities whose responsibility is to investigate wrongdoing" requires that any doubts should be resolved in favor of finding the

communication to be privileged. (*Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 733 [151 Cal.Rptr. 206].)

Many, if not most, allegations of police misconduct are also violations of various criminal statutes. (Brent, *Redress of Alleged Police Misconduct: A New Approach to Citizen Complaints and Police Disciplinary Procedures* (1977) 11 U.S.F. L.Rev. 587, 608.) But the very nature and purpose of citizens' complaints and police disciplinary proceedings may require a standard of proof which is much less exacting than the standard of proof beyond a reasonable doubt required in criminal proceedings. (*Id.,* fn. 87.) Allowing police officials to prosecute a citizen for filing a complaint against an officer under Penal Code section 832.5 by using the provisions of Penal Code section 148.5 would have the tendency to "chill" the willingness of citizens to file complaints, particularly on weak evidence and when the same entity against which the complaint is made will be investigating the accusations. (See *White* v. *Davis* (1975) 13 Cal.3d 757, 767 [120 Cal.Rptr. 94, 533 P.2d 222].)

Therefore, we are of the opinion that the Legislature did not intend citizens' complaints to a law enforcement entity concerning the conduct of that entity or its officers as envisioned under Penal Code section 832.5 to be within the definition of a police report for the purposes of Penal Code section 148.5. Thus, appellant's more complex constitutional arguments need not be considered.

We therefore find that the superior court erred in refusing to consider appellant's contention that her complaint was not within the definition of Penal Code section 148.5; and, since we find that it is not as a matter of law, the superior court's denial of appellant's petition for a writ of mandate is hereby reversed and the court is directed to issue a writ compelling the municipal court to dismiss the prosecution on the complaint charging appellant with a violation of Penal Code section 148.5.

Franson, Acting P. J., and Hopper, J., concurred.

A petition for a rehearing was denied September 11, 1979, and the petition of the real party in interest and respondent for a hearing by the Supreme Court was denied October 11, 1979.