TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
|  | : | No. 94-406 |
| of | : | |
|  | : | May 8, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
|  | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
|  | : | |

---

THE HONORABLE JOHN F. HAHN, COUNTY COUNSEL, COUNTY OF AMADOR, has requested an opinion on the following questions:

1. How are the proceeds from the sale by a county of assets forfeited under the California Control of Profits of Organized Crime Act to be distributed?

2. How are the proceeds from the sale by a county of assets forfeited under the California Uniform Controlled Substances Act to be distributed?

3. Are the proceeds distributed to the sheriff from the sale by a county of assets forfeited under the California Uniform Controlled Substances Act to be tendered outside the normal budgetary process undertaken by the board of supervisors?

CONCLUSIONS

1. Except as the court declaring the forfeiture orders a distribution to a bona fide or innocent purchaser, conditional sales vendor, or holder of a valid lien, mortgage or security interest, and except as otherwise provided in connection with violations of statutes pertaining to child pornography, the proceeds from the sale by a county of assets forfeited under the California Control of Profits of Organized Crime Act are to be distributed to the county for its expenditures made or incurred in connection with the repair, storage, transportation, and sale of the property, and the remainder to the general fund of the county.

2. Except as the court declaring the forfeiture orders a distribution to a bona fide or innocent purchaser, conditional sales vendor, or mortgagee of the property, the proceeds from the sale by a county of assets forfeited under the California Uniform Controlled Substances Act are to be distributed to the county for its expenditures made or incurred in connection with the repair, storage, transportation, and sale of the property, and the remainder as follows: 65 percent to the sheriff's office and other participating law enforcement agencies according to the proportionate

1.                                                                                                          94-406

contribution of each, 10 percent to the district attorney's office, 24 percent to the general fund in the State Treasury, and 1 percent to eligible nonprofit organizations.

3. The proceeds distributed to the sheriff from the sale by a county of assets forfeited under the California Uniform Controlled Substances Act are not to be tendered outside the normal budgetary process undertaken by the board of supervisors. However, the distribution of the proceeds by the board of supervisors shall not supplant any state or local funds that would otherwise be made available to support the law enforcement efforts of the sheriff.

ANALYSIS

1.    CRIMINAL PROFITEERING ASSET FORFEITURES

The California Control of Profits of Organized Crime Act (Pen. Code, §§ 186-186.8)[1] provides for the forfeiture of property acquired during the course of engagement in a "pattern of criminal profiteering activity." (§ 186.4.)  The first inquiry concerns the proper distribution of the proceeds from the sale by a county of assets forfeited for criminal profiteering. Section 186.8 sets forth the distribution of the proceeds from a forfeiture sale as follows:

"Notwithstanding that no response or claim has been filed pursuant to Section 186.5, in all cases where property is forfeited pursuant to this chapter and, where necessary, sold by the Department of General Services or local governmental entity, the money forfeited or the proceeds of sale shall be distributed by the local governmental entity as follows:

"(a)  To the bona fide or innocent purchaser, conditional sales vendor, or holder of a valid lien, mortgage or security interest, if any, up to the amount of his or her interest in the property or proceeds, when the court declaring the forfeiture orders a distribution to that person.  The court shall endeavor to discover all such lienholders and protect their interests and may, at is discretion, order the proceeds placed in escrow for up to an additional 60 days to ensure that all valid claims are received and processed.

"(b)  To the Department of General Services or local governmental entity for all expenditures made or incurred by it in connection with the sale of property, including expenditures for any necessary repairs, storage, or transportation of any property seized under this chapter.

"(c)  To the general fund of the state or local governmental entity, whichever prosecutes.

"(d)  In any case involving a violation of subdivision (b) Section 311.2, or Section 311.3 or 311.4, in lieu of the distribution of the proceeds provided for by subdivisions (b) and (c), the proceeds shall be deposited in the county children's trust fund, established pursuant to Section 18966 of the Welfare and Institutions Code, of the county which filed the petition of forfeiture.  If the county does not have a

---

[1]All references to the Penal Code prior to footnote 3 are by section number only.

children's trust fund, the funds shall be deposited in the State Children's Trust Fund, established pursuant to Section 18969 of the Welfare and Institutions Code."[2]

Section 186.8 provides that in a local prosecution, the proceeds of the sale shall be distributed by the "local governmental entity" in the following order: (1) to a bona fide purchaser, conditional sales vendor, or holder of a valid lien, mortgage or security interest when so ordered by a court, (2) to the "local governmental entity" for its expenditures made or incurred in connection with the repair, storage, transportation, and sale of the property, and (3) to the general fund of the "local governmental entity." In cases involving a violation of laws pertaining to child pornography, the distribution is to a children's trust fund rather than to the general fund or to cover expenses.

While the phrase "local governmental entity" is not defined in the statute, there can be little doubt that it refers, for purposes of the present inquiry, to the county as distinguished from a particular agency of the county, and that the "general fund of the . . . local governmental entity" refers to the county's general fund. In another statutory scheme, discussed below, pertaining to the distribution of proceeds from the sale of property forfeited in connection with controlled substance violations, the phrase "local governmental entity" is expressly defined as "any city, county, or city and county in this state." (Health & Saf. Code, § 11489, subd. (d).)

Here, the interpretive maxim applies that "[s]tatutes in pari materia should be construed together." (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 744; 74 Ops.Cal.Atty.Gen. 37, 40 (1991).) Further, other statutes that might bear upon the meaning of the statute at issue may be considered. (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 682; 62 Ops.Cal.Atty.Gen. 70, 73 (1979).) More specifically, similar phrases in statutes on like subjects will be similarly construed. (*Hunstock* v. *Estate Dev. Corp.* (1943) 22 Cal.2d 205, 210-211; *Estate of Hoertkorn* (1979) 88 Cal.App.3d 461, 465-466.)

The application of these precepts is particularly compelling in interpreting section 186.8 inasmuch as it was originally enacted as part of the Statutes of 1982, chapter 1281, approved by the Governor on September 21, 1982, and filed with the Secretary of State on September 22, 1982. The similar forfeiture statute defining the phrase "local governmental entity" (then Health & Saf. Code, § 11488.7), was introduced by the same author, enacted as part of the Statutes of 1982, chapter 1289, and approved by the Governor and filed with the Secretary of State on the same respective dates.

It is concluded that except as the court declaring the forfeiture orders a distribution to a bona fide or innocent purchaser, conditional sales vendor, or holder of a valid lien, mortgage or security interest, and except as otherwise provided in connection with violations of statutes pertaining to child pornography, the proceeds from the sale by a county of assets forfeited under the California Control of Profits of Organized Crime Act are to be distributed to the county for its

---

[2]Under section 186.5 subdivision (a), "[a]ny person claiming an interest in the property or proceeds may . . . file . . . a verified claim stating his or her interest in the property or proceeds." A response may also be filed by the defendant denying that the property is subject to forfeiture. (§ 186.5, subd. (b).) At the forfeiture hearing, the prosecuting agency has the burden of establishing beyond a reasonable doubt that the defendant was engaged in the criminal activity in question and that the property is subject to forfeiture. (§ 186.5, subd. (d).)

Violations of sections 311.2, 311.3, and 311.4 involve child pornography. The children's trust funds at the state and county levels support child abuse and neglect prevention and intervention programs.

expenditures made or incurred in connection with the repair, storage, transportation, and sale of the property, and the remainder to the general fund of the county.

## 2.   CONTROLLED SUBSTANCES ASSET FORFEITURES

The California Uniform Controlled Substances Act (Health & Saf. Code, §§ 11000-11651)[3] provides for the forfeiture of property seized in connection with controlled substance violations (cf. §§ 11350-11392). The second inquiry concerns the proper distribution of the proceeds from the sale by a county of assets forfeited for such violations. Section 11489 provides for the distribution as follows:

"Notwithstanding Section 11502 and except as otherwise provided in Section 11473, in all cases where the property is seized pursuant to this chapter and forfeited to the state or local governmental entity and, where necessary, sold by the Department of General Services or local governmental entity, the money forfeited or the proceeds of sale shall be distributed by the state or local governmental entity as follows:

"(a) To the bona fide or innocent purchaser, conditional sales vendor, or mortgagee of the property, if any, up to the amount of his or her interest in the property, when the court declaring the forfeiture orders a distribution to that person.

"(b) The balance, if any, to accumulate, and to be distributed and transferred quarterly in the following manner:

"(1) To the state agency or local governmental entity for all expenditures made or incurred by it in connection with the sale of the property, including expenditures for any necessary repairs, storage, or transportation of any property seized under this chapter.

"(2) The remaining funds shall be distributed as follows:

"(A) Sixty-five percent to the state, local, or state and local law enforcement entities that participated in the seizure distributed so as to reflect the proportionate contribution of each agency.

"(i) Fifteen percent of the funds distributed pursuant to this subparagraph shall be deposited in a special fund maintained by the county, city, or city and county of any agency making the seizure or seeking an order for forfeiture. This fund shall be used for the sole purpose of funding programs designed to combat drug abuse and divert gang activity, and shall wherever possible involve educators, parents, community-based organizations and local businesses, and uniformed law enforcement officers. Those programs that have been evaluated as successful shall be given priority. These funds shall not be used to supplant any state or local funds that would, in the absence of this clause, otherwise be made available to the programs.

"It is the intent of the Legislature to cause the development and continuation of positive intervention programs for high-risk elementary and secondary schoolage

---

[3]All references hereafter to the Health and Safety Code are by section number only.

students.  Local law enforcement should work in partnership with state and local agencies and the private sector in administering these programs.

"(ii) The actual distribution of funds set aside pursuant to clause (i) is to be determined by a panel consisting of the sheriff of the county, a police chief selected by the other chiefs in the county, and the district attorney and the chief probation officer of the county.

"(B)  Ten percent to the prosecutorial agency which processes the forfeiture action.

"(C)  Twenty-four percent to the General Fund.  Notwithstanding Section 13340 of the Government Code, the moneys are hereby continuously appropriated to the General Fund. . . .

"(D)  One percent to a private nonprofit organization composed of local prosecutors which shall use these funds for the exclusive purpose of providing a statewide program of education and training for prosecutors and law enforcement officers in ethics and the proper use of laws permitting the seizure and forfeiture of assets under this chapter.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d)  All the funds distributed to the state or local governmental entity pursuant to subparagraphs (A) and (B) of paragraph (2) of subdivision (b) shall not supplant any state or local funds that would, in the absence of this subdivision, be made available to support the law enforcement and prosecutorial efforts of these agencies.

"The court shall order the forfeiture proceeds distributed to the state, local, or state and local governmental entities as provided in this section.

"For the purposes of this section, `local governmental entity' means any city, county or city and county in this state.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."[4]

Section 11489 generally provides that in a local prosecution, the proceeds of the sale shall be distributed by the "local governmental entity" in the following order:  (1) to a bona fide purchaser, conditional sales vendor, or mortgagee when so ordered by a court, (2) to the "local governmental entity" for its expenditures made or incurred in connection with the repair, storage, transportation, and sale of the property, and (3) to the participating "local law enforcement entities," "prosecutorial agency," "General Fund," and eligible nonprofit organizations.

---

[4]Section 11502 requires that any money, forfeited bail, or fine received by a court pursuant to sections 11000-11651 is to be distributed as follows:  75 percent to the state and 25 percent to the county or city depending upon where the offense occurred.  Section 11473 provides for the destruction of certain seized property upon conviction of the owner or defendant. Government Code section 13340 generally prohibits the encumbrance of any continuously appropriated state funds except by provision in the Budget Act.

As previously noted, the phrase "local governmental entity" is expressly defined in section 11489 to include counties. The phrase "local law enforcement entity," however, is not defined. Clearly, the term "governmental entity" is general, while a "law enforcement entity" connotes a particular agency within the governmental entity. Further, as a matter of reasoned hypothesis, had the Legislature intended to refer to the county generally, it would have employed the term expressly defined to include a county.

The term "law enforcement" in common parlance pertains to the investigation, detection, and punishment of crime. In the case of a county, these functions are the primary duty of the sheriff. (Gov. Code, §§ 12560, 12561, 26600-26605.) We do not accord significance to the use of the term "entity" as distinguished from the term "agency" in connection with the phrase "law enforcement." "Agency" and "entity" are often used synonymously in various contexts. For example, while Penal Code section 832.5 provides that "[e]ach department or agency in this state which employs peace officers shall establish a procedure to investigate citizens' complaints against the personnel of such departments or agencies," the court in *Pena* v. *Municipal Court* (1979) 96 Cal.App.3d 77, 83, stated with respect to this statutory terminology: "the Legislature did not intend citizens' complaints to a law enforcement entity concerning the conduct of that entity or its officers as envisioned under Penal Code section 832.5 to be within the definition of a police report. . . ." Another example is found in the very provision of the statute under consideration: "Sixty-five percent to the . . . local . . . law enforcement entities that participated in the seizure distributed so as to reflect the proportionate contribution of each agency." (§ 11489, subd. (b)(2)(A).) Accordingly, the phrase "law enforcement entity" refers, for purposes of this discourse, to the sheriff's office.

The term "prosecutorial agency" contained in section 11489 undoubtedly refers to the office of the district attorney. (See, § 11488.4, subd. (j)(5) ["prosecuting agency" used synonymously with Attorney General or district attorney]; *Nasir* v. *Sacramento etc. District Attorney* (1992) 11 Cal.App.4th 976, 984-985, 990 [office of the district attorney described as the "prosecuting agency"].)

Finally, the term "General Fund" as used in subdivision (b)(2)(C) of section 11489 refers to the general fund in the State Treasury. As previously indicated, Government Code section 13340 referenced in the subdivision is found among the provisions governing the executive department of state government, and generally prohibits the encumbrance of moneys continuously appropriated without regard to fiscal years by any statute other than the Budget Act.

It is concluded, therefore, that the proceeds from the sale by a county of property forfeited for controlled substance violations are to be distributed first to a bona fide purchaser, conditional sales vendor, or mortgagee as may be ordered by the court, second to the county for its designated expenditures, and the remainder as follows: 65 percent to the sheriff's office and to other law enforcement agencies according to the contribution of each, 10 percent to the district attorney's office, 24 percent to the general fund in the State Treasury, and 1 percent to eligible nonprofit organizations.

3.    DISTRIBUTION TO LAW ENFORCEMENT ENTITIES

The final inquiry concerns the disposition of the 65 percent of the remainder funds referred to in subdivision (b)(2)(A) of section 11489 with regard to the sale of property seized in connection with controlled substance violations. Specifically, is that portion to be tendered in the case of a local prosecution directly to and for disposition by the sheriff without going through the usual budgetary process of the board of supervisors? In our view, the funds should not be so tendered but rather allocated by the board of supervisors through the normal budgetary process.

Nothing in section 11489 suggests an intended departure from the ordinary procedures for fiscal management by a county. In this regard, "A county may exercise its powers only through the board of supervisors or through agents and officers acting under authority of the board or authority conferred by law." (Gov. Code, § 23005.) Government Code section 25303 provides in part:

"The board of supervisors shall supervise the official conduct of all county officers . . . and particularly insofar as the functions and duties of such county officers . . . relate to the assessing, collecting, safekeeping, management, or disbursement of public funds. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff."

The county board of supervisors exercises control over the county budget. (Gov. Code, §§ 29000-29093.) Accordingly, county officers are generally limited in the incurring or paying of obligations to the amounts of the appropriations allowed by the budget. (Gov. Code, § 29120; see *Beck* v. *County of Santa Clara* (1988) 204 Cal.App.3d 789, 800-801; *County of Butte* v. *Superior Court* (1985) 176 Cal.App.3d 693, 698-700.)

In any event, section 11489 clearly indicates that the respective portions of the proceeds designated for ultimate distribution to a sheriff and to a district attorney shall first be distributed to the local governmental entity. Specifically, subdivision (d) begins with the words: "All the funds distributed to the . . . local governmental entity pursuant to subparagraphs (A) and (B) of paragraph (2) of subdivision (b) shall not supplant any state or local funds . . . ." While subparagraphs (A) and (B) provide that portions are to be allocated to the sheriff and district attorney respectively, initial distribution is to the "local governmental entity." As previously discussed, the latter term by statutory definition refers to a county as distinguished from a particular agency within a county. Hence, the statute contemplates that "[a]ll the funds" be distributed initially to the county for allocation by the board of supervisors.

Further, the second sentence of subdivision (d) of section 11489 provides: "The court shall order the forfeiture proceeds distributed to the . . . local governmental entities as provided in this section." Of particular interest here is the fact that in the version of the same statute which was operative until January 1, 1994, the words "local agencies" appeared in lieu of the words "local governmental entities" in the quoted sentence. In the version which became operative on January 1, 1994, the words "local governmental entities" were substituted in conjunction with the addition of a specific definition of those words, i.e., ". . . any city, county, or city and county in this state."

Moreover, the first paragraph of section 11489 provides that ". . . the proceeds of sale shall be distributed by the . . . local governmental entity" in the manner prescribed by the statute. Of course, the county may not distribute the proceeds as prescribed in the statute unless it first receives them.

It is concluded, therefore, that the proceeds from the sale by a county of assets forfeited under the California Uniform Controlled Substances Act designated for use by the sheriff are to be distributed to the sheriff by the county acting through its board of supervisors in the exercise of its budgetary authority. It is expressly recognized that the distribution of the proceeds by the board of supervisors shall not supplant any state or local funds that would otherwise be made available to support the law enforcement efforts of the sheriff. (§ 11489, subd. (d).)

* * * * *

* * * * *