TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-111 |
| of | : | |
| | : | July 29, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DE WITT W. CLINTON, COUNTY COUNSEL, COUNTY OF LOS ANGELES, has requested an opinion on the following question:

May a law enforcement agency investigate an allegation of police misconduct if the prescribed information advisory form has not been signed by the person filing the allegation?

CONCLUSION

A law enforcement agency may investigate an allegation of police misconduct even though the prescribed information advisory form has not been signed by the person filing the allegation.

ANALYSIS

Penal Code section 832.5, subdivision (a),[1] provides as follows:

"Each department or agency in this state which employs peace officers shall establish a procedure to investigate citizens' complaints against the personnel of such departments or agencies, and shall make a written description of the procedure available to the public."

_____

[1] All unidentified section references herein are to the Penal Code.

1.                                                                        96-111

The Legislature, through the adoption of section 832.5, has indicated its desire that complaints filed with a law enforcement agency are to be encouraged. (*Pena* v. *Municipal Court* (1979) 96 Cal.App.3d 77, 82.) The Legislature contemplated that when police misconduct was discovered in such investigations, appropriate disciplinary action would be taken; the purpose of the statute is to have the agency "investigate and remedy wrongdoing." (*Id.*, at p. 82; 71 Ops.Cal.Atty.Gen. 1, 3 (1988).)

Section 148.6 was recently enacted (Stats. 1995, ch. 590, § 1) to provide as follows:

"(a) Every person who files any allegation of misconduct against any peace officer . . . knowing the report to be false, is guilty of a misdemeanor.

"(b) Any law enforcement agency accepting an allegation of misconduct against a peace officer shall require the complainant to read and sign the following information advisory, all in boldface type:

"YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

"IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.

"I have read and understood the above statement.

" _____
   Complainant"

We are asked whether a law enforcement agency may initiate an investigation and take appropriate action in connection with a complaint of police misconduct where the information advisory form has not been signed by the complainant. Essentially, if allegations of police misconduct are contained in an anonymous or unsigned complaint, is the agency prohibited from investigating and taking disciplinary action? We conclude that the agency is not so prohibited.

In analyzing the terms of sections 148.6 and 832.5, we apply well established principles of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) "[A] statute `. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citation.]" (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097; see also *Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381.) "`A statute must be construed "in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts." [Citation.]'" (*People* v. *Hull* (1991) 1 Cal.4th 266, 272.) "A statute should be construed whenever possible so as to preserve its constitutionality." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

Applying these principles, we find that a "law enforcement agency . . . shall require the complainant to . . . sign the . . . information advisory . . . ." (§ 148.6, subd. (b).) Use of the term "shall" indicates that the agency's duty is mandatory, not permissive or discretionary. (See *West* v. *State of California* (1986) 181 Cal.App.3d 753, 760; *State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 855; *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 348.)

However, section 148.6 does not prescribe a penalty for an agency's noncompliance with its statutory duty. No consequences are stated; no sanctions are expressed. May we add a penalty provision to the terms of the statute under the guise of statutory interpretation?

For example, a complainant refuses to sign the advisory form because of a fear of official retaliation, concern about social ostracism, or merely a desire to preserve his or her privacy. May we insert into section 148.6 a provision that such refusal removes the power and jurisdiction of the agency to investigate the allegations, even if the allegations appear legitimate and substantial?

The courts have examined this general issue in a variety of contexts. A failure to comply with a mandatory duty did not bar further action in *Edwards* v. *Steele* (1979) 25 Cal.3d 406, 409-413 [administrative decision valid although hearing held and decision rendered after deadlines specified in city charter]; *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 931 [wage resolution valid though enacted prior to the date designated in city charter]; *Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 434-436 [judicial decision valid though rendered after statutorily prescribed period]; *Cake* v. *City of Los Angeles* (1913) 164 Cal. 705, 709-710 [tax assessment valid although not adopted within time limit prescribed by statute]; *People* v. *Curtis* (1986) 177 Cal.App.3d 982, 987-989 [judicial order valid although hearing held after statutory deadline]; and *Castorena* v. *City of Los Angeles* (1973) 34 Cal.App.3d 901, 908 [reapportionment ordinance valid though enacted subsequent to charter designated deadline]. In *Curtis*, the court relied upon language contained in *French* v. *Edwards* (1872) 80 U.S. (13 Wall.) 506, 511 [20 L.Ed. 702, 703], which was also quoted with approval in *People* v. *McGee* (1977) 19 Cal.3d 948, 961. In *French*, Justice Fields declared:

"There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard to which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated." (*French* v. *Edwards*, *supra*, 80 U.S. at 511.)

The absence of a "penalty for noncompliance, i.e., the consequences . . . in the legislation itself" (*Palmer* v. *City of Ojai* (1986) 178 Cal.App.3d 280, 293) is thus significant in determining whether a public agency loses power and jurisdiction by its failure to act as required by law. Here, as previously observed, section 148.6 is silent with respect to the consequences of a law enforcement agency's noncompliance in obtaining a signed advisory form.

We have examined in detail the legislative history of the enactment of section 148.6 in 1995. Nothing therein remotely suggests that a law enforcement agency loses its authority to investigate a complaint if the advisory form is unsigned. Obviously the signature is to establish that the complainant has "read and understood" the information contained on the advisory form.

Finally, we are required to interpret section 148.6 in a manner that avoids any doubt as to its constitutionality. (See *Young* v. *Haines* (1986) 41 Cal.3d 883, 898; 66 Ops.Cal.Atty.Gen. 367, 368 (1983).) Both the federal Constitution (U.S. Const., 1st Amend.) and state Constitution (Cal. Const., art. I, § 3) protect the right of the people to petition government for the redress of grievances. (See *McIntyre* v. *Ohio Elections Comm'n* (1995) ___ U.S. ___, 115 S.Ct. 1511, 1516-1517, 131 L.Ed.2d 426; *Zablocki* v. *Redhail* (1978) 434 U.S. 374, 388; *California Transport* v. *Trucking Unlimited* (1972) 404 U.S. 508, 510; *Mine Workers* v. *Illinois Bar Assn.* (1967) 389 U.S. 217, 222; *City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 532-535; *Fair Political Practices Commission* v. *Superior Court* (1979) 25 Cal.3d 33, 46-49; *Matossian* v. *Fahmie* (1980) 101 Cal.App.3d 128, 135-137.) This constitutional right has been applied to anonymous complaints (see *McIntyre* v. *Ohio Elections Comm'm*, *supra*, 115 S.Ct. at 1516 ["the anonymity of an author is not ordinarily a sufficient reason to exclude [the publication] . . . from the protections of the First Amendment"]; *Talley* v. *California* (1960) 362 U.S. 60, 64 ["persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all"]) and undergirds the statutory right to file complaints of police misconduct (see *Pena* v. *Municipal Court*, *supra*, 96 Cal.App.3d at 83 ["Many, if not most, allegations of police misconduct are also violations of various criminal laws"]; *Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 55 [it is a policy of the law "to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing"]; *People* v. *Craig* (1993) 21 Cal.App.4th Supp. 1, 5 ["the importance of providing the community an avenue to report alleged misconduct by peace officers overrides concerns that this process may be abused by individuals to falsely report police misconduct"].)

The plain wording and legislative history of section 148.6, along with the governing principles of statutory construction, including the duty to uphold the statute's constitutional validity, all

support the conclusion that a law enforcement agency does not lose its power and jurisdiction to investigate allegations of police misconduct even though it fails to secure the signature of the complainant on the advisory form.

We thus conclude that a law enforcement agency may investigate an allegation of police misconduct and take appropriate action based thereon even though the prescribed information advisory form has not been signed by the person filing the allegation.

* * * * *