113 Cal.Rptr.2d 529 (2001)
93 Cal.App.4th 469
The PEOPLE, Plaintiff and Respondent,
v.
Shaun STANISTREET, Defendant and Appellant.
The People, Plaintiff and Respondent,
v.
Barbara Joyce Atkinson, Defendant and Appellant.
No. B143501.
Court of Appeal, Second District, Division Six.
October 30, 2001.
As Modified on Denial of Rehearing November 26, 2001.
Review Granted January 23, 2002.
*531 John J. Hunter, Judge[*], Superior Court County of Ventura.
Andrew Wolf, Ventura, for Defendant and Appellant Shaun Stanistreet.
Steven Warner, Washington DC, for Defendant and Appellant Barbara Atkinson.
Daniel P. Tokaji and Mark D. Rosenbaum, Los Angeles, for ACLU Foundation of Southern California as Amicus Curiae on behalf of Defendants and Appellants.
Michael D. Bradbury, District Attorney, and Michael D. Schwartz, Deputy District Attorney, for Plaintiff and Respondent.
*530 GILBERT, P.J.
Penal Code section 148.6.[1] makes it a crime to knowingly make a false accusation of misconduct against a peace officer. It is not a crime to knowingly make such an accusation against a firefighter, a paramedic, a teacher, an elected official, or anyone else. By protecting only peace officers, section 148.6 selectively prohibits expression because of its content. It therefore violates the First Amendment to the United States Constitution.

FACTS
In a written complaint filed with the Oxnard Police Department, defendants Shaun Stanistreet and Barbara Atkinson accused an Oxnard police officer of committing lewd conduct at a Police Activities League (PAL) gathering. PAL is a police-sponsored group that works with at-risk youth. The officer was the director of PAL. The charges proved to be false.
A jury found Atkinson and Stanistreet guilty of violating section 148.5, filing a false report of a criminal offense; and section 148.6, subdivision (a)(1), knowingly filing a false charge of police misconduct.
On appeal to the appellate division of the superior court, Atkinson and Stanistreet asserted that section 148.5 was inapplicable (see Pena v. Municipal Court (1979) 96 Cal.App.3d 77, 157 Cal.Rptr. 584; People v. Craig (1993) 26 Cal.Rptr.2d 184, 21 Cal. App.4th Supp. 1) and section 148.6 was facially unconstitutional (R.A.V. v. City of St. Paul, Minn. (1992) 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305).
The appellate division of the superior court affirmed the convictions by a two-to-one decision. To secure uniformity of decision and to settle an important question of law, we ordered transfer. (Snukal v. Flightways Mfg., Inc. (2000) 23 Cal.4th 754, 762, 98 Cal.Rptr.2d 1, 3 P.3d 286; Cal. Rules of Court, rule 62.)[2]

DISCUSSION

1. Section 148.5
Section 148.5, subdivision (a), states in pertinent part: "Every person who reports *532 to any peace officer ... that a felony or misdemeanor has been committed, knowing the report to be false, is guilty of a misdemeanor."
A citizen's complaint asserting misconduct by police officers does not constitute a crime punishable under section 148.5. (See People v. Craig, supra, 26 Cal.Rptr.2d 184, 21 Cal.App.4th Supp. at pp. 3, 6; Pena v. Municipal Court, supra, 96 Cal.App.3d at p. 83, 157 Cal.Rptr. 584.)
The appellate division distinguished Pena and Craig because the reported misconduct here involved a lewd act, wrongdoing "outside the scope of the officer's duties...." The court reasoned that "the alleged crime was in no sense a mishandling by the officer of normal duties, but an action that would be criminal when perpetrated in similar circumstances by any person."
Neither the language of section 148.5 nor Pena support this conclusion. In Pena, the defendant accused the officer of stealing money, conduct that does not fall within the scope of the officer's duties. So, too, here the alleged conduct falls outside the scope of the officer's duties. "We are of the opinion that the Legislature did not intend for citizens' complaints of police misconduct made to the police chief or other governmental officers to be considered as a report of a criminal offense under Penal Code section 148.5. A common sense reading of the section itself suggests that the section is intended to deter false reports of crimes and the resulting inconvenience and danger to other members of the public, such as that in People v. Rainey (1964) 224 Cal.App.2d 93 [36 Cal.Rptr. 291]. This interpretation is supported by the fact Penal Code section 148.5 is one in a series of sections designed to prevent false reports to those responsible for police and fire protection and other emergency services. [Citation.]" (Pena v. Municipal Court, supra, 96 Cal.App.3d at p. 82,157 Cal.Rptr. 584.)
Pena also points out that section 148.5 inhibits citizen complaints against police officers because it is police officers who investigate such complaints, and who may seek prosecution against the complaining citizen. (Pena v. Municipal Court, supra, 96 Cal.App.3d at p. 83, 157 Cal.Rptr. 584.) We therefore reverse the judgments of conviction under section 148.5.

2. Section 148.6
Section 148.6, subdivision (a)(1) provides: "Every person who files any allegation of misconduct against any peace officer, ... knowing the allegation to be false, is guilty of a misdemeanor." The law requires that the alleged misconduct occur during the course of the officer's official duties. (San Diego Police Officers Assn. v. San Diego Police Department (1999) 76 Cal.App.4th 19 at p. 23, 90 Cal.Rptr.2d 6.)
Section 148.6, subdivision (a)(2) requires that the citizen-complainant be warned in boldface print of the criminal consequences of knowingly filing a false complaint. The written warning states:
"YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND *533 HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATED TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS. [¶] IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE."

A. Content-Based Discrimination
The First Amendment denies the government the "power to restrict expression because of its message, its ideas, its subject matter, or its content. [Citations.]" (Police Dept. of City of Chicago v. Mosley (1972) 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212.) "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based, [citations.]" (Turner Broadcasting System, Inc. v. F.C.C. (1994) 512 U.S. 622, 643 [,114 S.Ct. 2445, 129 L.Ed.2d 497, 581].) "The First Amendment generally prevents government from proscribing speech ... because of disapproval of the ideas expressed...." (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at p. 382, 112 S.Ct. 2538.)
But certain types of speech, such as obscenity and defamation may be regulated "because of their constitutionally proscribable content ...." (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at p. 383, 112 S.Ct. 2538.) Such regulation, however is not absolute, but may be limited by the Constitution. As R.A.V. explained, "In our view, the First Amendment imposes ... a `content discrimination limitation upon a State's prohibition of proscribable speech." (Id. at p. 387, 112 S.Ct. 2538.)
"[C]ontent discrimination `raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace'...." (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at p. 387, 112 S.Ct. 2538, citing Simon & Schuster, Inc. v. Members of New York. State Crime Victims Bd. (1991) 502 U.S. 105, 116, 112 S.Ct. 501, 116 L.Ed.2d 476.) It is for this reason that content discrimination laws are presumptively invalid. (Rosenberger v. Rector and Visitors of University of Virginia (1995) 515 U.S. 819, 829, 115 S.Ct. 2510,132 L.Ed.2d 700.)
A content neutral statute makes no reference to the substance of the regulated conduct. (Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc. (1976) 425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346.) A statute regulating speech is content discriminatory if it targets the viewpoint of the speaker. (Rosenberger v. Rector and Visitors of University of Virginia, supra, 515 U.S. at p. 829, 115 S.Ct. 2510.) To determine content neutrality in speech cases, the principal inquiry is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." (Ward v. Rock Against Racism (1989) 491 U.S. 781, 791, 109 S.Ct. 2746,105 L.Ed.2d 661.)
Thus, the Legislature may proscribe defamation or libel, but it may not discriminate as to the subject matter or content of the defamation or libel. For example, "the government may proscribe libel; but it may not make the further content discrimination of proscribing only libel critical of the government." (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at p. 384, 112 S.Ct. 2538.)
*534 In R.A.V., the Supreme Court reviewed the constitutionality of an ordinance that banned the display of a burning cross. Just as the R.A.V. ordinance discriminates as to fighting words, section 148.6 discriminates as to those about whom a false complaint may not be filed. A superficial distinction may be made between the statute in R.A.V. and section 148.6. In R.A.V., fighting words, wherever made were prohibited. In the instant case only those false accusations of misconduct which are filed against a police officer are prohibited. But section 148.6 nevertheless discriminates because of the content of speech. Moreover, the speech draws significance, not merely because it is made, but because it is filed. (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at p. 380, 112 S.Ct. 2538.) The high court found that the content-based ordinance was constitutionally defective because it punished the use of only those fighting words that insulted or provoked violence on the basis of disfavored categories: race, color, creed, religion or gender. Fighting words based on other categories were not included within the statute. (Id. at p. 391, 112 S.Ct. 2538.)
So, too, here section 148.6 selectively bans a particular class of speech. Just as the R.A.V. ordinance discriminates as to fighting words, section 148.6 discriminates as to those about whom false accusations may not be made.
Two federal district courts have reached a similar conclusion. "Section 148.6 impermissibly discriminates on the basis of the content of the speech which it criminalizes and, therefore, facially violates the First Amendment...." (Hamilton v. City of San Bernardino (C.D.Cal.2000) 107 F.Supp.2d 1239, 1248.) Gritchen v. Collier (C.D.Cal.1999) 73 F.Supp.2d 1148, 1152, reversed on other grounds by Gritchen v. Collier (9th Cir.2001) 254 F.3d 807, held unconstitutional Civil Code section 47.5 which "restricts defamatory speech against one group of public officials (peace officers), while leaving intact the protections for defamatory speech against other public officials" contained in Civil Code section 47. Like section 148.6, Civil Code section 47.5 treated citizen complaints against police officers differently from complaints against all other government officers and thus made an impermissible content-based discrimination against a type of speech. (Gritchen v. Collier, supra, at p. 1152.)

B. Permissible Content-Based Laws
Although "[c]ontent-based regulations are presumptively invalid," the First Amendment's prohibition against content discrimination does not give prescribable speech absolute protection. (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at pp. 382, 387, 112 S.Ct. 2538.) R.A.V. identified three instances where content discrimination does not pose a threat to the expression of ideas:

(1) Proscription of an Entire Class of Unprotected Speech
One exception occurs "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is prescribable...." (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at p. 388, 112 S.Ct. 2538.) This abstruse language challenges comprehension but can best be understood by way of a concrete example provided by R.A.V. "A State might choose to prohibit only that obscenity which is the most patently offensive in its prurience ...." (Ibid.) In such a case "no significant danger of idea or viewpoint discrimination exists." (Ibid.) The hypothetical statute does not carve out exceptions and is neutral. A statute, however, may not prohibit only that obscenity which includes offensive political messages. In such case the statute's treatment of obscenity is not neutral because it severely limits its application and thus discriminates as to idea or viewpoint.
*535 The same type of limitation occurs in section 148.6. It makes it unlawful to knowingly file a false complaint against persons belonging to a select class, police officers. Section 148.6, like the ordinance in R.A.V., is solely directed at those who seek to harm a specific class of individuals. Other governmental agents and employees are not so protected by the law. Section 148.6, therefore, discriminates because of idea or viewpoint. It runs afoul of the First Amendment because its treatment of defamation is not neutral.

(2) Secondary Effects
"Differential treatment" is allowed where "the subclass of prescribable speech ... happens to be associated with particular `secondary effects' of the speech, so that the regulation is `justified without reference to the content of the speech'....'" (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at p. 389, 112 S.Ct. 2538.) A statute that, for example, targets the secondary effects of cross-burning (i.e., fear and terrorism), and not the point of view of the exhibitor (i.e., anti-religion and racial views), will pass constitutional muster. (Id. at p. 385, 112 S.Ct. 2538; In re Steven S. (1994) 25 Cal.App.4th 598, 612, 31 Cal.Rptr.2d 644.) While fear may affect different people in different ways, it is not limited to a particular class of people. (See also Wisconsin v. Mitchell (1993) 508 U.S. 476, 481-188, 113 S.Ct. 2194, 124 L.Ed.2d 436 [state may enhance sentence where victim is attacked because of race]; In re M.S. (1995) 10 Cal.4th 698, 721, 42 Cal.Rptr.2d 355, 896 P.2d 1365 [statute may prohibit threats aimed at protecting individuals in the exercise of their rights rather than in the suppression of their speech].)
Section 148.6, on the other hand, focuses entirely upon the point of view of the citizen who knowingly makes a false report of police misconduct and not upon the secondary effect the false report may have on an officer's peace of mind. Section 148.6 cannot be justified without reference to its content.

(3) Official Suppression Afoot
Last, content discrimination may be allowed if "there is no realistic possibility that official suppression of ideas is afoot." (R.A.V. v. City of St. Paul, Minn., supra, 505 U.S. at p. 390, 112 S.Ct. 2538.) Section 148.6 deals with speech. (Hamilton v. City of San Bernardino, supra, 107 F.Supp.2d at p. 1248.) The explicit legislative intent of the law is to suppress a specific class of speech: citizen complaints of police misconduct.
"The Legislature noted that since the Rodney King incident in March 1991, law enforcement agencies throughout the state had `revised their citizen complaint procedures to promote greater accountability on the part of their line officers.' (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1732 (1995-1996 Reg. Sess.).) However, a `glaringly negative side-effect which has resulted [was] the willingness on the part of many of our less ethical citizens to maliciously file false allegations of misconduct against officers in an effort to punish them for simply doing their jobs.' (Ibid.) Against this backdrop, the Legislature enacted section 148.6, in an attempt to curb a perceived rising tide of knowingly false citizens' complaints of misconduct by officers performing their duties." (San Diego Police Officers Assn. v. San Diego Police Department, supra, 76 Cal.App.4th at p. 23, 90 Cal.Rptr.2d 6.)
It is without question that competent law enforcement significantly benefits society. (Baggett v. Gates (1982) 32 Cal.3d 128, 143, 185 Cal.Rptr. 232, 649 P.2d 874.) A false complaint potentially impairs the ability of an officer to carry out assigned tasks. (Aguilar v. Johnson (1988) 202 Cal. *536 App.3d 241, 249-50, 247 Cal.Rptr. 909 [placing of citizen complaint in officer's personnel file could have adverse effect upon officer's employment].) A proponent of section 148.6 attested that about 60 to 70 percent of the citizens' complaints received by the Los Angeles County Sheriff were unfounded. (Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 1732 (Boland) (1995-1996 Reg. Sess.) as introduced Feb. 24,1995, p. 2.)
But section 148.6 might well stifle the registering of legitimate complaints made by the remaining 30 to 40 percent of citizens. (See Bandes, Tracing the Pattern of No Pattern: Stories of Police Brutality (2001) 34 Loy. L.A. L.Rev. 665, 669 [citizen complaints of excessive force are often not appropriately investigated by law enforcement officials]; see also Pena v. Municipal Court, supra, 96 Cal.App.3d at p. 83, 157 Cal.Rptr. 584.)

CONCLUSION
"The policy supporting an absolute privilege for criticism of the government is to allow the free communication of ideas, a concept at the core of First Amendment liberties." (City of Long Beach v. Bozek (1982) 31 Cal.3d 527, 535, 183 Cal.Rptr. 86, 645 P.2d 137; see also Rosenblatt v. Boer (1966) 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597.) The right of citizens to petition their government must not be chilled merely because it is discommoding to public employees. "From the vantage of the harried public servant, exposure to public scrutiny and criticism may hamper and upset the day-to-day operation of a governmental agency." (New York Times Co. v. Superior Court (1997) 52 Cal.App.4th 97, 103, 60 Cal.Rptr.2d 410.)
The duties of a police officer "`... are peculiarly "governmental" in character and highly charged with the public interest....'" (Gomes v. Fried (1982) 136 Cal.App.3d 924, 933, 186 Cal.Rptr. 605.) "Law enforcement officers carry upon their shoulders the cloak of authority to enforce the laws of the state." (New York Times Co. v. Superior Court, supra, 52 Cal.App.4th at p. 104, 60 Cal.Rptr.2d 410; see also Bradbury v. Superior Court (1996) 49 Cal.App.4th 1108, 1116, 57 Cal. Rptr.2d 207 [public comments made by a district attorney critical of the shooting of a citizen by a peace officer were privileged].)
With that power goes the inconvenience of being subjected to the "slings and arrows" of some members of the public. (Duran v. City of Douglas, Ariz. (9th Cir. 1990) 904 F.2d 1372, 1378["[W]hile police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful but protected by the First Amendment."]; Imig v. Ferrar (1977) 70 Cal. App.3d 48, 56, 138 Cal.Rptr. 540["[I]t is distressing and demoralizing for police officers to be subjected to false accusations of brutality, but that may be one of the crosses that a police officer must bear, in light of the power and deadly force the state places in his hands."].)
Nor have the People established that officers lack effective means to rebut groundless complaints. Internal oversight procedures may quickly screen out spurious complaints such as those filed by Stanistreet and Atkinson. As noted in Gritchen v. Collier, supra, 73 F.Supp.2d at p. 1153, "[i]f these protections are insufficient, California may strengthen existing safeguards or provide procedures to ensure police officers' careers are not put in jeopardy until after a complaint's truth is verified."
*537 Freedom of false accusations made against public officials are generally privileged by statute. (Civ.Code, § 47.) In our country, we expect and tolerate an infinite variety of expression. (United States v. Poocha (9th Cir.2001) 259 F.3d 1077, 1082 [criticism of the police, profane or otherwise, is not a crime].)
We have held that "[o]ur constitution protects everyoneeven politicians." (Beilenson v. Superior Court (1996) 44 Cal.App.4th 944, 946, 52 Cal.Rptr.2d 357.) Our list includes prosecutors (Bradbury v. Superior Court, supra, 49 Cal.App.4th 1108, 57 Cal.Rptr.2d 207), attorneys in general (Cunningham v. Superior Court (1986) 177 Cal.App.3d 336, 222 Cal.Rptr. 854), and prison inmates (Hoversten v. Superior Court (1999) 74 Cal.App.4th 636, 88 Cal.Rptr.2d 197).
It may be regrettable that a consequence of our decision is to include in our list those who come within section 148.6. It is law enforcement officers who daily confront the worst that society has to offer. They risk their lives to provide citizens a safer and better place to live. But our list includes those, who through fear of prosecution under section 148.6 choose silence instead of legitimate criticism of law enforcement. "The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual." (Imig v. Ferrar, supra, 70 Cal.App.3d at p. 56, 138 Cal.Rptr. 540, citing King v. Barges (1972) 28 Cal.App.3d 27, 34, 104 Cal.Rptr. 414.)
Section 148.6 inhibits the free expression of ideas because it discriminates as to the content of speech. It therefore violates the First Amendment.[3]
The judgments of conviction are reversed.
We concur: YEGAN and PERREN, JJ.
NOTES
[*] Retired judge of the Ventura County Municipal Court, assigned by the Chief Justice pursuant to California Constitution, article VI, section 6.
[1] Unless otherwise specified, all statutory references are to the Penal Code.
[2] Rule 62 provides, in relevant part: "(a) A Court of Appeal may order a case transferred to it for hearing and decision when the superior court certifies or the Court of Appeal on its own motion determines from an opinion of the appellate department published or to be published in Advance California Appellate Reports that such transfer appears necessary to secure uniformity of decision or to settle important questions of law."
[3] Having reversed the conviction, we need not discuss appellants' remaining contention concerning equal protection and overbreadth.