[Civ. No. 53359. Second Dist., Div. One. Dec. 22, 1978.]

EUGENE BRODY, Plaintiff and Appellant, v.
FRANCIS MONTALBANO et al., Defendants and Respondents.

726

COUNSEL

Jacque Boyle for Plaintiff and Appellant.

Frieman, Rosenfeld & Zimmerman and Gary L. Zimmerman for Defendants and Respondents.

OPINION

HANSON, J.—Plaintiff Eugene Brody appeals from a judgment entered pursuant to a directed verdict in favor of defendants Francis Mantalbano, Frances Montalbano, Virginia Westphal, Doris Scobey and Fred J. Scobey as to all causes of action which included, inter alia, defamation, malicious prosecution, conspiracy to interfere with prospective advantage and to defame, and intentional infliction of emotional distress.

FACTS

The events giving rise to this litigation grew out of an incident at Le Conte Junior High School involving defendants' three sons and other students.

Defendants' sons were members of a stage crew class of approximately 12 boys. The teacher of the stage crew class, Mr. Autrey, had also been assigned to oversee an audiovisual class which met in another room at the

same time. As a consequence the boys in the stage crew class went unsupervised from time to time as Mr. Autrey alternated his time between the two classes.

Apparently, it was the custom of the stage crew boys to engage in "horseplay," punching and kicking one another, during the periods they were unsupervised. On June 8, 1972, during one unsupervised period, the boys attacked an audiovisual student, James Grant. Unbeknownst to the boys, James had just returned to school after recovering from a head injury or brain concussion. There is no evidence that the boys intended to injure James, but in the scuffle that ensued, James was punched, kicked and either fell or was pushed to the floor from some steps leading out of the auditorium. James lost consciousness for a few minutes. When Mr. Autrey returned and discovered what had transpired in his absence, he assisted James, took him to the nurse's office and ordered the 12 boys to go to the office of Mr. Brody, the boys' vice principal and plaintiff in this case.

The exact sequence of events after the boys arrived at Mr. Brody's office is somewhat uncertain. It is clear, however, that the vice principal did question the boys about the incident and eventually defendants' sons and a fourth boy either admitted participating in the incident or were implicated by others in the class, or both. In addition, Mr. Brody reported the incident to the police who arrested the four boys, took them into custody, and booked them for battery. No action was taken against the other eight boys in the class. Later that same day police released the arrested boys to their parents, and the boys returned to school after a four-day suspension.

Dissatisfied with the results of subsequent conversations they had had individually with Mr. Brody and/or Dr. Steinberg, the principal at Le Conte, defendant parents met and jointly drafted a letter to the Los Angeles City Board of Education (hereinafter referred to as the Board). Further correspondence ensued between these parents and the Board which culminated when the defendant parents filed with the Board a formal complaint against Mr. Brody on April 18, 1973. Although the grounds for defendants' complaint were set forth at length in an attachment to the formal complaint, their allegations can be summarized as consisting of three principal elements: (1) Mr. Brody made inappropriate comments and threats to defendants' sons immediately following the incident; (2) Mr. Brody called police without an appropriate preliminary investigation; and (3) Mr. Brody failed to call the parents of the arrested boys.

As a result of this complaint, the Board held a "Rule 133" hearing on June 8, 1973. Unfortunately, no reporter's transcript was made of this proceeding. The Board issued its conclusions on June 29, 1973. The written conclusions of the Board disclose that the Board found certain of the allegations of the defendant parents to be well-founded although it did not hold Mr. Brody to be personally responsible.[1]

On January 24, 1974, Mr. Brody filed this litigation seeking damages and alleging causes of action in malicious prosecution, libel, conspiracy to interfere with prospective advantage, conspiracy to commit slander and/or libel, and intentional infliction of emotional distress. The litigation proceeded to trial by jury, and at the conclusion of all of the evidence, defendants' motions for directed verdict and judgment were granted by the trial court. Mr. Brody has appealed from the judgment.

## ISSUES

Mr. Brody contends that the trial court erred in granting defendants' motion for directed verdict because (1) as to the action for defamation, the statements by the defendant parents were not privileged; (2) as to the action for malicious prosecution, defendants' filing of a complaint with the Board with the allegations therein made showed malice; (3) as to the

---

[1]"Following the presentation of all of the evidence, both oral and documentary, the Board has come to the following conclusions:

"1. That the behavior of the three students was unfortunate and deserving of the suspensions administered by the school;

"2. That the incident involving James Grant was serious and could have been tragic;

"3. That the Vice Principal acted in conformance with administrative procedures and Board Rules;

"4. That the calling of the police was appropriate, but the arrest was probably premature since the boys involved had basically good records and would no doubt have been available if necessary and there was no evidence of premeditation on their part;

"5. That the parents should have been called immediately, in terms not only of the State Code but of desirable administrative practice and human concern;

"6. That the Principal should have involved himself in making certain that the matters related in No. 5 above were appropriately pursued even if it meant going to the homes of the parents if they could not be reached by telephone;

"7. That, on the basis of known evidence, the Board holds the opinion that the seriousness of the incident does not justify a permanent police record;

"8. That the Board, in principle, would support the parents in requesting a sealing and expungement of the records as provided in law. See Penal Code Section 1203.45;

"9. That the absence of close supervision in the auditorium during stage crew time had previously led to infractions of the rules by the students and that the school administrators should make certain that appropriate certificated supervision is present during any student class activity or enterprise; and finally

"10. That the Board has no reason to believe that Mr. Brody's position on racial and ethnic issues is or has ever been anything but honorable."

claim for interference with prospective advantage, substantial evidence established his right to recovery because the defendant parents' statements were not privileged; and (4) as to the action for intentional infliction of emotional distress, the evidence showed the statements of the defendant parents were not privileged.

## DISCUSSION

The sole issue presented on this appeal is whether defendants' motions for directed verdict were properly granted.

■ "A . . . directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' [Citations.] Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. [Citation.] . . . the function of the trial court on a motion for a directed verdict is analogous to . . . that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict." (*Estate of Lances* (1932) 216 Cal. 397, 400-401 [14 P.2d 768]; *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360].) In accord with these principles, we accept as true the evidence in the record which is most favorable to plaintiff. (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 117 [52 Cal.Rptr. 561, 416 P.2d 793]; *Dailey* v. *Los Angeles Unified Sch. Dist., supra,* 2 Cal.3d at p. 745.)

I

■ Plaintiff-appellant Brody contends that he was defamed by the statements published by defendant parents. Civil Code section 47, subdivision 2, renders *absolutely* privileged (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405]) a publication made "In any (1) legislative

or (2) judicial proceeding, or (3) in any other official proceeding authorized by law; . . . ."

The statutory phrase "in any other official proceeding authorized by law" has been broadly interpreted to include those proceedings which resemble judicial and legislative proceedings, such as transactions of administrative boards and proceedings which are quasi-judicial or quasi-legislative in nature. (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656].)

In *Martin* v. *Kearney* (1975) 51 Cal.App.3d 309 [12 Cal.Rptr. 281], a school teacher, Henriette Martin, brought an action against the parents of two of her students based on allegedly libelous statements made by defendants in letters to the principal. This court concluded that letters sent to the employer of a school teacher, which are designed to prompt official action with respect to the conduct of that person as a school teacher, are absolutely privileged under Civil Code section 47, subdivision 2. (*Id.,* at p. 311.) Accordingly, defendant parents' communications with the Board in the instant case, which were intended to prompt official action on the part of the Board with respect to Mr. Brody's conduct as an administrator, are absolutely privileged.

Moreover, the existence of an absolute privilege is not dependent upon a finding that the Rule 133 hearing on June 8, 1973, constituted an "official proceeding," since communications to an official agency, which are designed to induce the agency to *initiate* action, are as much a part of the "official proceeding" as communications made after the agency commences proceedings. (*Martin* v. *Kearney, supra,* 51 Cal.App.3d 309, 311; *King* v. *Borges* (1972) 28 Cal.App.3d 27, 34 [104 Cal.Rptr. 414].) Therefore, all of the communications of defendant parents with the Board, beginning with their letter of July 3, 1972, and culminating with the hearing on June 8, 1973, were absolutely privileged.[2]

 Mr. Brody contends that even if the communications between the parents and the Board were privileged, the defendant parents made other defamatory publications which were not related to the official proceedings, and which were, therefore, not privileged.

---

[2]Because we conclude that the conduct of the defendant parents was privileged under Civil Code section 47, subdivision 2, Mr. Brody's allegation of a conspiracy adds nothing and does not vitiate the privilege. (*Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 93-94 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]; *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 491 [104 Cal.Rptr. 650].)

The nature of the privilege is such that absolute immunity attaches if: "the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law." (*Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 825 [106 Cal.Rptr. 718].)

Underlying the absolute privilege is a recognition of the importance of providing utmost freedom of communication between citizens and public authorities whose responsibility is to investigate wrongdoing. (*Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 55 [138 Cal.Rptr. 540].) Accordingly, any doubt as to whether the necessary connection between the publication and the action exists is to be resolved in favor of a finding of privilege. (*Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 926 [134 Cal.Rptr. 145]; *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 93 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152].)[3]

The foregoing principles are applicable to those publications which Mr. Brody argues were unrelated to defendant parents' communications with the Board. These include: (1) The discussion by the parents of their complaints against Mr. Brody with Mr. and Mrs. Grant and with Mrs. Evans; (2) the exposure of Mr. Scobey's secretary who typed the correspondence which defendant parents sent to the Board; and (3) the notarization of the defendant parents' complaint.

The defendant parents met twice with Mr. and Mrs. Grant, the parents of James Grant. The purpose of their first visit was to determine whether Mr. Grant had directed Mr. Brody to call the police. The purpose of their second visit was to determine whether Mr. Grant would testify at the upcoming Board hearing. Defendant parents also met with Mrs. Evans. As the mother of the fourth boy arrested, Mrs. Evans had a direct interest in the correspondence these parents had with the Board. Although she was not a party to the formal complaint filed with the Board, Mrs. Evans did sign two of the earlier letters which the defendant parents sent to the Board.

---

[3]At oral argument and by subsequent letters authorized by the court, the parties have referred to the consideration of this issue in *Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918 [148 Cal.Rptr. 242], and *Umansky* v. *Urquhart* (1978) 84 Cal.App.3d 368 [148 Cal.Rptr. 547]. Since hearing was granted by the California Supreme Court in the *Tiedemann* case and it was retransferred to the Court of Appeal for future decision, it cannot be considered at this time. The principles set forth in *Umansky* are consistent with those expressed herein.

It appears that the privilege extended to the defendant parents' communications with Mr. and Mrs. Grant and with Mrs. Evans. "To accomplish the purpose of judicial or quasi-judicial proceedings, it is obvious that the parties or persons interested must confer and must marshal their evidence for presentation at the hearing. The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings. To make such preparations and presentations effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course, that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings. . . ." (*Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 490-491 [104 Cal.Rptr. 650].)

With regard to the publication to Mr. Scobey's secretary, Mr. Scobey testified that handwritten drafts of defendant parents' letters to the Board were given to his secretary for typing, solely for the purpose of insuring that they would be in a legible form for transmission to the Board. There was no evidence controverting this assertion. Obviously, defendant parents could have submitted handwritten letters to the Board. However, it is customary for business correspondence to be typed and therefore, defendant parents' action seems reasonably necessary for this purpose.

The California Legislature has recognized that disclosure of confidential communications to secretarial help is reasonably necessary to accomplish the transmission of the information, hence such disclosure will not destroy the privilege. (See Evid. Code, §§ 952 [lawyer-client privilege], 992 [physician-patient privilege], 1012 [psychotherapist-patient privilege].) There was no loss of the privilege by virtue of the fact that the documents typed by the secretary were unrelated to Mr. Scobey's business. In order to partake of the absolute privilege a publication need not be pertinent, relevant or material in a technical sense to any issue in the action; it need only have some connection or relation to the proceedings. (*Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, 90; *Ascherman* v. *Natanson, supra,* 23 Cal.App.3d 861, 865; *Pettitt* v. *Levy, supra,* 28 Cal.App.3d 484, 489.) It is clear that such a connection was established here.

■ The defendant parents had the complaint form which they received from the Board notarized even though the form itself stated they were signing under penalty of perjury. Mr. Brody argues that this amounts to an excessive publication by which the absolute privilege claimed by defendant parents was lost. Although Mr. Brody's arguments presume there was a publication to the notary, the evidence shows that actually none occurred. The notary's seal appears on page 2 of the complaint form. However, there is neither a reference to Mr. Brody's name nor to the defendants' charges against him on this page. All details of the complaint against Mr. Brody were contained in an attachment to the form provided by the Board. Furthermore, Mr. Scobey testified that the notary did not read the complaint, and Mr. Brody offered no evidence which contradicted Mr. Scobey's testimony.[4]

## II

■ We turn secondly to plaintiff-appellant's contention that the trial court erred in its determination that evidence of malicious prosecution was insufficient because of the nature of the proceeding upon which it was based.

■ California has adopted the position of section 680 of the Restatement of Torts that an action for malicious prosecution may be founded upon a proceeding instituted before an administrative agency as well as a judicial proceeding. (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 580-581 [311 P.2d 494].) That section provides that one who takes an active part in the initiation, continuation or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other is subject to liability for any special harm caused thereby, if (a) he acts without probable cause to believe that the charge or claim on which the proceedings are based may be well founded, and primarily for a purpose other than that of securing appropriate action by the board, and (b) the proceedings have terminated in favor of the person against whom they are brought.

---

[4]It should be noted that the result would not differ if a publication were found. Although it might appear that defendants displayed excessive caution in having the document notarized in their desire to assure exact compliance with Board rules, nonetheless since their action was related to the official proceedings, the privilege attached.

■ Moreover, the fact that "a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individuals wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405]; *Imig* v. *Ferrar, supra,* 70 Cal.App.3d 48, 57.)

■ Mr. Brody alleges in his complaint that the foregoing requirements were met in that a formal administrative proceeding was instituted against him as a result of defendant parents' complaint, that the accusations contained in the complaint were made without probable cause and were motivated by malice, and that he was exonerated of misconduct at the hearing. From the record before us, however, it appears that no formal proceedings were initiated by the Board against Mr. Brody since the results of its investigation pursuant to procedures established by Rule 133 convinced the Board that, although the handling of the situation left something to be desired, Mr. Brody had acted in conformance with administrative procedure and Board rules.

A mere investigation which does not lead to the initiation of proceedings before an administrative board having the power to take action adversely affecting legally protected interests of the accused is not a sufficient basis upon which to found a malicious prosecution action under *Hardy* v. *Vial, supra,* 48 Cal.2d 577. (*Imig* v. *Ferrar, supra,* 70 Cal.App.3d 48, 58.)

The *Imig* court declared that a special rule applies where governmental action of an administrative character is a prelude to further more formal administrative proceedings. In that situation, despite the administrative power to affect a legally protected interest at the preliminary stage, the process is still deemed investigatory so long as investigation is the primary purpose and the power to impose sanctions is substantially more limited than available in the more formal administrative process to which the first stage is a prelude. If the investigation is terminated at the first stage, *Imig* holds that no proceeding has been initiated. (70 Cal.App.3d at p. 60.)

Here the Rule 133 hearing conducted by the Board was a prelude to the possibility of administrative action of a more formal nature pursuant to the detailed provisions of the Education Code dealing with the

removal and other discipline of certificated employees. Here, while the Board at the Rule 133 hearing had the power to affect legally protected interests by transfer with the potential of eventual demotion, the function of the hearing was primarily investigatory and the potential sanction flowing from the hearing itself was much less than could be imposed if the process went forward. Here the process did not go forward but terminated at the Rule 133 hearing without action adverse to Mr. Brody. Thus, as in *Imig* where a complaint to a police chief whose power to impose discipline upon the subject of the complaint included the right to suspend the subject for 30 days or to invoke a board or rights hearing to seek a greater sanction was deemed not to initiate a proceeding (70 Cal.App.3d 48, 60), defendants' complaint here must be treated as having triggered an investigation but not a proceeding as the latter is required if there is to be a legally cognizable right to redress for malicious prosecution.

■ Mr. Brody argues, however, that if the privilege for official proceedings applies to his defamation cause of action, then it follows that there were official proceedings for purposes of malicious prosecution. This contention ignores the fact, previously discussed, that the absolute privilege attaches to publications *preliminary to* official proceedings, which publications are intended by the author to initiate official action. (*Ascherman* v. *Natanson, supra,* 23 Cal.App.3d 861, 865.) However, to justify recovery for malicious prosecution, there must actually have been an initiation of civil proceedings against another before an administrative board. If, as in the instant case, the publication does not lead the official agency to initiate such proceedings, the plaintiff has not suffered the type of injury for which a malicious prosecution action lies. (*Imig* v. *Ferrar, supra,* 70 Cal.App.3d 48, 58-59.) The fact that Mr. Brody had to undergo a certain amount of inconvenience to persuade the Board that the charges against him were unfounded is not in itself sufficient to justify a malicious prosecution action. (*Id.,* at p. 59.)

III

Mr. Brody contends that the trial court erred in granting defendants' motion for directed verdict on the grounds that conduct privileged under Civil Code section 47 may not be utilized as the basis for a claim of interference with prospective advantage.

It has been determined that justification for interference with contractual relations is closely analogous to privilege in defamation, and that the tort of inducing breach of contract cannot be used to close the channel of communication through which citizens may express their grievances to public officials. (*Bledsoe* v. *Watson* (1973) 30 Cal.App.3d 105, 110 [106 Cal.Rptr. 197].) It having been previously determined that defendants' conduct was privileged, we conclude that Mr. Brody is precluded from utilizing it as the basis of an action for interference with prospective advantage.

In addition to the matter of privilege, Mr. Brody has failed to sustain his burden of proof to show that, except for defendants' conduct, there was a reasonable probability that an economic advantage would have accrued to him. (*Campbell* v. *Rayburn* (1954) 129 Cal.App.2d 232, 234 [276 P.2d 671]; *Wilson* v. *Loew's, Inc.* (1956) 142 Cal.App.2d 183, 190 [295 P.2d 152].) Mr. Brody introduced evidence that he was ranked third on a list of 10 candidates for a position as a secondary opportunity principal, that he was not offered such a position during the period the list remained in force (Mar. 1972 to Mar. 1974), and that the persons ranked first, second and eighth were selected as secondary opportunity principals in June 1972. This occurred prior to the time the defendants sent their letter to the Board. Mr. Brody admitted that he did not know why he was not appointed. This does not constitute evidence of sufficient substantiality to support a verdict in favor of plaintiff-appellant and therefore, the trial court did not err in granting a motion for directed verdict as to this cause of action.

## IV

█ Plaintiff-appellant further contends that the trial court erred in granting defendants' motion for directed verdict on the basis that conduct which is privileged under Civil Code section 47 may not form the basis for an intentional infliction of emotional distress action.

Underlying the privilege conferred by Civil Code section 47 is the important public policy of affording the utmost freedom of access to the courts. (*Albertson* v. *Raboff, supra,* 46 Cal.2d 375, 380.) To allow plaintiff to proceed with a cause of action for intentional infliction of emotional distress would operate as a severe deterrent to communications otherwise protected and would thereby substantially defeat the purpose of the privilege. (*Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 579 [131 Cal.Rptr. 592].) Therefore, California permits no cause of

action based upon the defamatory nature of a communication which is itself privileged under the defamation laws. (*Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804, 808 [42 Cal.Rptr. 314]; *Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393]; *Lerette* v. *Dean Witter Organization, Inc., supra,* 60 Cal.App.3d at p. 579.)

## DISPOSITION

The judgment is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 18, 1979, and appellant's petition for a hearing by the Supreme Court was denied March 29, 1979. Newman, J., was of the opinion that the petition should be granted.