Filed 6/20/13  Wild Goose Club v. Wild Goose Storage CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| WILD GOOSE CLUB, | |
| Plaintiff, Cross-defendant and Respondent, | C068772 |
| v. | (Super. Ct. No. 149934) |
| WILD GOOSE STORAGE LLC, | |
| Defendant, Cross-complainant and Appellant; | |
| WILD GOOSE ENERGY COMPANY LLC, | |
| Cross-defendant and Respondent. | |

Wild Goose Club, Inc. (Club), operates a waterfowl hunting club on approximately 1,500 acres of real property in Butte County.  Wild Goose Storage, LLC (Storage) uses depleted reservoirs located far below the surface of the same property to store billions of cubic feet (bcf) of natural gas for later resale on the energy market. Under the terms of a 1997 lease and surface rights addendum, Storage makes lease payments worth hundreds of thousands of dollars each year to lessor, Wild Goose Energy

1

Company, LLC (Energy). However, Club receives no lease payments despite having surface rights to the property.

Starting in 2009, Club sought to receive lease payments from Storage as a third-party beneficiary of the lease. In addition, Club demanded that Storage abate the noise and emissions from its operations site on the property. Club communicated its claims for lease payments to Storage, Storage's parent company, Niska Gas Storage Partners (Niska), and attorneys for insurers and underwriters who helped Niska issue stock in a public offering. After Storage rejected the demands, Club opposed Storage before the California Public Utilities Commission (CPUC), informed Niska about the third-party beneficiary claims, and filed the present lawsuit. Club's complaint is based on its claim that it is the intended third-party beneficiary of the 1997 lease agreement between Storage and Energy. After Energy was joined as an indispensable party, Storage cross-complained against Energy and Club. Club responded with an "anti-SLAPP" motion to strike Storage's cross-complaint. (Code Civ. Proc., § 425.16 (Section 425.16).)[1] The motion was based on the assertion that Storage's cross-complaint sought to chill Club's right of petition. Storage opposed the motion, which was granted in part and denied in part by the trial court.

---

[1] " 'SLAPP is an acronym for strategic lawsuit against public participation. [Citation.]' (*Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1329, fn. 3 (*Balzaga*).) To ensure that 'participation [in matters of public significance] not be chilled through abuse of the judicial process' (§ 425.16, subd. (a)), the Legislature established a presumption against the maintenance of litigation arising from any act 'in furtherance of the [defendant]'s right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue' (§ 425.16, subd. (b)(1))." (*Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 678, fn. 2 (*Summit*).)

On appeal, Storage contends the trial court erred to the extent it granted the anti-SLAPP motion. Storage further argues the trial court's order granting the special motion to strike is "fatally flawed" because it does not actually grant or deny the motion as to any of the causes of action. Based on its assertion of errors, Storage contends this court is compelled to reverse the award of costs and fees to Club for prevailing on the anti-SLAPP motion. Finally, Storage seeks its own attorney fees for opposing the motion.

We conclude the order granting in part Club's special motion to strike does not comply with section 425.16's requirement that the trial court identify which causes of action are stricken and which may proceed to trial. Applying the two-part test for reviewing anti-SLAPP motions, we conclude the motion should have been granted as to the causes of action for intentional interference with contract and conspiracy to interfere with contract. Both contract causes of action involve protected activity and Storage had not demonstrated a probability of success on these two causes of action. However, the motion should have been denied as to Storage's cause of action for declaratory relief because the request for declaratory relief does not involve protected activity. Because we cannot ascertain the extent to which the trial court granted the special motion to strike, we vacate the trial court's order with directions to enter a new order: (1) granting the special motion to strike the causes of action in the cross-complaint for intentional interference with contract and conspiracy to interfere with contract; and (2) denying the motion as to the cause of action for declaratory relief.

We also vacate the award of attorney fees and costs to Club for bringing the anti-SLAPP motion and direct the trial court to consider fees and costs in light of this court's instructions to grant in part the special motion to strike.

3

## BACKGROUND

### *Club's Operative Complaint*

In its third amended and supplemental complaint (the operative complaint) plaintiff Club alleges it is entitled to lease payments from Storage as the intended third-party beneficiary of a surface rights addendum to a 1997 lease agreement between Storage and Energy. Club further alleges the surface rights addendum imposed noise restrictions on the natural gas storage operations of Storage. Based on these allegations, Club seeks damages for breach of contract as well as declaratory and injunctive relief against defendant Storage.[2]

### *Storage's Cross-Complaint*

Storage responded by filing a cross-complaint against Club and Energy. The cross-complaint asserted causes of action against Club for: (1) intentional interference with contract, (2) conspiracy to interfere with contract, and (3) for declaratory relief. Each of these causes of action against Club expressly incorporated the allegations concerning Club's conduct in demanding lease payments from Storage, communicating with Niska and its underwriters, and Club's opposition before the CPUC to Storage's expansion plans.

Storage's cross-complaint asserted, "the Club, with the support and assistance of Energy, has engaged in a willful and calculated effort to extract prospectively millions of dollars from Storage which Storage has no obligation to pay to the Club by, among other things, asserting non-existent contractual rights, disrupting Storage's relationship with

---

[2]    Although Energy was named as an additional defendant after the trial court found it to be an indispensible party, Club and Energy entered into an assignment and dismissal agreement prior to the filing of Club's operative complaint. Thus, the causes of action in Club's operative complaint do not seek damages or injunctive relief against Energy.

4

Energy, asserting knowingly false and frivolous claims against Storage, directing and instructing officers, directors and/or other agents of Energy to repudiate Energy's obligations to Storage, engaging in other conduct detrimental to the rights and interests of Storage and otherwise acting in a hostile and threatening manner."

The cross-complaint further alleges: Under the terms of the 1997 lease agreement, Club sold to Energy all of its rights and interests in the property for $821,000.[3] In turn, Storage acquired from Energy the subsurface rights to the property when the parties executed a lease and a surface rights addendum to the lease. In pertinent part, the lease between Storage and Energy stated, "[t]his Lease constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes all prior and contemporaneous agreements, representations and understandings of the parties with respect to the subject matter hereof." Based on this term, Storage alleges, "[t]here is no language in the 1997 Lease or in the SRA [surface rights addendum] that grants the Club any rights of any kind whatsoever, including any right to seek enforcement of any obligations of the lessee contained in those documents. Similarly, there is no language in the 1997 Lease or in the attached [surface rights addendum] that grants the Club any rights as a third-party beneficiary of the agreement between Energy and Storage. Accordingly, the Club has no legal basis upon which to obtain the relief it seeks in this lawsuit."

---

[3] The operative complaint alleges the property was subject to earlier lease agreements by entities preceding Energy, Storage, and Club. However, the agreements preceding the 1997 lease and the subsequent surface rights addendum do not affect the issues asserted by the parties in this appeal.

### *Communications with Storage Demanding Lease Payments*

Storage further alleges that Club interfered with Storage's rights under the surface rights addendum by engaging in the following conduct:  In December 2009, Dino Cortopassi –- Club's president –- wrote a letter to Niska.  In that letter, Cortopassi demanded that Storage engage in "direct discussion" of the "leasehold interests" claimed by Club.  Again, in January 2010, Cortopassi communicated to Niska that "Club intended to go after Storage to get a significant deal similar to what Energy currently receives."  In February 2010, Club demanded "satisfactory accommodation" with Storage in the form of an annual payment "equal to 'the greater of $250,000 or one percent (1%) of (Storage's) total Annual Gross Revenues.' "  However, "Storage rejected the Club's unjustified demand."

### *Communications in Connection with Niska's Public Offering of Stock.*

In February 2010, Niska filed a registration with the United States Securities and Exchange Commission for a public offering of more than $350 million of company stock. In April 2010, Cortopassi wrote to Niska's chief executive officer and the attorneys for the underwriters and the issuers of the public offering to inform them of Club's legal action against Storage.  Storage alleges that Cortopassi's letters "were calculated to disrupt and interfere with Niska's public offering by falsely stating and implying that Storage did not have a legal right under its Lease with Energy to expand the storage capacity of the Reservoirs" under the Butte County property.  Storage further alleges the "unprivileged conduct of [Cortopassi] and the Club in directing his April 19, 2010, letter to persons involved in or impacted by the pending Niska public offering who had no relationship with the Club was intended to impose additional improper pressure on Storage to accede to the ongoing shakedown efforts for the Club."

***Communications in Connection with Storage's Application to the CPUC***

Cortopassi's April 2010 letter also announced Club was " 'in its final preparations to file its opposition brief to Niska's pending application with the [CPUC] in which Storage sought CPUC approval to expand storage capacity of the Reservoirs as permitted by its Lease with Energy.' "  According to the cross-complaint, Club "did go forward with its unjustified and baseless effort to oppose Storage's CPUC application which caused Storage to incur months of delay in obtaining approval of that application and significant costs and expenses."

The cross-complaint also alleges that an assignment and dismissal agreement between Energy and Club " 'will allow (the Club) to pursue (Storage) in any court action, for breach of contract claims arising out of a breach of the [surface rights addendum].' " Based on allegations of collusion between Energy and Club, the cross-complaint set forth causes of action against Energy for breach of contract, breach of the implied covenant of good faith and fair dealing, concealment, and declaratory relief.

***Club's Anti-SLAPP Motion***

Club moved to strike the cross-complaint pursuant to section 425.16.  Club argued the cross-complaint impermissibly sought to chill Club's right to petition by targeting the protected activities of (1) making pre-filing demands and participating in settlement negotiations, (2) filing a lawsuit with probable cause of success, (3) providing information to Niska's chief executive officer and various attorneys representing the underwriters, (4) participating in CPUC proceedings, and (5) accepting an assignment of rights by a litigant.  Club further argued Storage could not establish a probability of succeeding on its causes of action because it could not show an intentional act to disrupt the contractual relationship between Energy and Storage or that Club conspired to disrupt the contractual relationship.

7

Storage opposed the anti-SLAPP motion, arguing the cross-complaint neither implicated Club's right to petition nor speech on any matter of "public concern." Moreover, Storage argued it was likely to succeed on proof that Club's settlement demands represented "bad faith tactics" and the evidence would show Club unlawfully interfered with the lease agreement between Storage and Energy.

### *Order on the Anti-SLAPP Motion*

After a hearing, the trial court issued an order on the anti-SLAPP motion that states in pertinent part: "The special motion to strike is granted as to any cause of action that *derives* from pre-litigation communications, the filing of this lawsuit, participation in the CPUC matter, or communications concerning the stock offering. The special motion to strike is denied as to the other acts complained of, including the assignment of the [surface rights addendum]. Leave to amend is denied. Since the special motion to strike is granted in part, the Court will find that an award of attorney's fees incurred is appropriate and is to be brought by noticed motion."

### *Storage's Request for Clarification of the Order*

In response to the order on the anti-SLAPP motion, Storage moved to "request[] that the Court clarify that portion of its Order filed in this matter on May 13, 2011 (the 'Order') regarding the Motion to Strike Storage's Cross-Complaint . . . filed by [Club] pursuant to . . . § 425.16 (the 'Anti-SLAPP Motion')." Storage stated, "The purpose of this motion is to request that the Court provide clarification regarding the intended impact of its Order on Storage's Fourth, Fifth and Sixth Causes of Action: most significantly Storage seeks clarification regarding which, if any, of Storage's Causes of Action the Court has ruled to be stricken and which remain extant; and as to those Causes of Action that remain extant, which if any lines or paragraphs thereof are deemed stricken. [¶] . . . [¶] It is the contention of Storage that none of the Causes of Action in its Cross-Complaint 'derive from' the four categories of conduct identified in the Court's Order.

8

Presumably the Club takes a contradictory position. For this reason clarification by the Court is necessary and appropriate. [¶] Simply stated, the provision for clarification by the Court of the intended scope and extent of its Order will add certainty with respect to the remaining scope and extent of Storage's Cross-Complaint and will reduce the likelihood of future disagreement among the parties regarding what matters are or are not before this Court by virtue of the Cross-Complaint."

Club opposed the motion, asserting, "the court properly struck all causes of action derived from the identified protected activities." Finding nothing ambiguous about the order, Club urged the trial court to deny the motion for clarification.

At the hearing on the motion, the following colloquy occurred:

"[Counsel for Storage]: . . . [I]n the Court's order, it's granting the motion as to the causes of action that, quote, derive from pre-litigation correspondence. The Court will note from both the cross-complaint, as well as the declaration of Simone [*sic*] Dupéré that was filed in opposition to the motion that there is pre-litigation correspondence, some of which has no reference whatsoever to litigation and some does have reference to litigation. We're seeking some clarification from the Court as to whether or not it's excluding all of that correspondence or only that correspondence which references litigation?

"THE COURT: Well, when we take a look at this –- at the SLAPP statute, it seems to me that the whole statute points to causes of action, not legal allegations or certain facts that may be part of a cause of action, and what you would like us to do is go through and parse out, essentially, what applies under the broad umbrella of the statute and what doesn't apply and, therefore, it probably is irrelevant."

Before the hearing concluded, Storage's counsel confirmed the trial court did not intend to identify which causes of action were stricken under section 425.16.

"[Counsel for Storage]: Okay. Your Honor, based upon the Court's intended ruling, is it fair to assume that, then, the Court is not going to further clarify as to whether or not specific causes of action are entirely stricken or just portions of them and, if portions only, what portions are being stricken by its order?

"THE COURT: That's correct."

The hearing concluded with the trial court denying the motion for clarification.

### *Attorney Fees*

Club moved for $31,725 in attorney fees and $903.13 for costs incurred in bringing the anti-SLAPP motion. Storage opposed the motion, arguing, "Club filed this Motion seeking recovery of all of its fees and costs" even though it had only partially prevailed on the special motion to strike. The trial court awarded $24,500 in attorney fees and costs as requested.

Storage timely filed its notice of appeal from the orders granting the special motion to strike and awarding attorney fees and costs.

### DISCUSSION

### I

### *Anti-SLAPP*

Storage contends the trial court's order must be reversed because it does not identify which –- if any –- of the three causes of action in Storage's cross-complaint against Club that were stricken under section 425.16. We agree the trial court should have identified which of Storage's causes of action were stricken and which were not. However, we disagree with Storage's further argument that the anti-SLAPP motion should have been denied in its entirety. As we explain, the cause of action for declaratory relief survives scrutiny under section 425.16.

10

## A.

### *Section 425.16*

Section 425.16 sets forth the requirements for striking causes of action intended to chill the rights of speech or petition. In pertinent part, the anti-SLAPP statute provides:

"(b)(1) *A cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

"(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

"(3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

"(c)(1) Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5. [¶] . . . [¶]

"(e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public

11

issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.)

As the California Supreme Court has explained, "Section 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); see generally *Equilon, supra,* 29 Cal.4th at p. 67.)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) In short, " '[o]nly a cause of action that satisfies both prongs of the anti-SLAPP statute -- i.e., that arises from protected speech or petitioning and lacks even minimal merit -- is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645, italics omitted.)

An anti-SLAPP motion challenging a complaint premised on multiple causes of action need not be granted or denied in its entirety. "[T]he fact the SLAPP motion [is] properly denied as to some of [the] causes of action does not preclude granting the

12

motion as to the remaining causes of action." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1004 (*ComputerXpress*).) Thus, the trial court must assess the merit of each cause of action challenged by a special motion to strike under section 425.16.

In considering a special motion to strike, the trial court must determine whether " 'the gravamen or principal thrust' of the action" targets protected activity. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) "Where . . . a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 ' "unless the protected conduct is 'merely incidental' to the unprotected conduct." ' (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 (*Peregrine Funding*) [first prong of SLAPP analysis met where the allegations of loss resulting from protected activity were not merely incidental or collateral to unprotected activity]; see *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 104 (*Mann*) [because the defendants' reports to government agencies formed a substantial part of the factual basis for defamation and trade libel claims, the claims were subject to the SLAPP statute even though also based on nonprotected statements].)" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550-1551.) The corollary to the gravamen of the complaint test is that "a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. (See *Paul v. Friedman* [(2002)] 95 Cal.App.4th [853,] 866 ['[t]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding'].)" (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; accord *Episcopal Church Cases*, *supra*, 45 Cal.4th at p. 478.)

In reviewing the trial court's order on the special motion to strike, we exercise our independent judgment. "Appellate review of a trial court's ruling on an anti-SLAPP

13

motion is de novo.  (*United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1625.)  ' "Thus, [appellate] review is conducted in the same manner as the trial court in considering an anti-SLAPP motion." '  (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1016.)"  (*Summit, supra,* 206 Cal.App.4th at p. 681.)

**B.**

***The Trial Court's Duties under Section 425.16***

Storage challenges the trial court's order by arguing, "the anti-SLAPP statute does not authorize the striking of an individual allegation from a cause of action, only the striking of a cause of action in its entirety. . . .  In 'striking' some allegations and not 'striking' others, the order ends up not striking *any* cause of action *at all.*"  The contention has merit.

The trial court did not determine whether the gravamen of the three causes of action in the cross-complaint against Club was focused on protected activity.  The order on the special motion to strike does not even identify the causes of action for intentional interference with contract, conspiracy to interfere with contract, and declaratory relief.  In short, the trial court did not carry out its duty under section 425.16 to determine whether Club met its burden to show the cross-complaint arose out of protected activity.  (*Episcopal Church Cases*, *supra*, 45 Cal.4th at p. 477.)

The trial court's error in failing to consider whether protected activity constitutes the gravamen of Storage's cross-complaint does not constitute error that is reversible per se.  Anti-SLAPP motions present questions of law that we review in the same way as the trial court without the need to resolve conflicts in the evidence.  (*U.S. Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton* (2009) 171 Cal.App.4th 1617, 1625.)  Consequently, " '[t]he lack of a statement of reasons presents no harm where . . . our independent review establishes the validity of the judgment.'  (*Soto v. State of California*

14

(1997) 56 Cal.App.4th 196, 199; see also *Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1459–1460 [applying harmless error standard].)" (*Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 449.) "If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion." (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307.) Accordingly, we apply the two-part test for anti-SLAPP motions in order to determine whether the causes of action in Storage's cross-complaint should have been stricken.

## C.

### *Whether the Gravamen of the Cross-complaint Pertains to Protected Activity*

#### *1. Causes of Action for Intentional Interference with Contract and for Conspiracy to Interfere with Contract*

Upon examination of the cross-complaint, we conclude the gravamen of Storage's causes of action for intentional interference with contract and conspiracy to interfere with contract pertain to protected activity. Specifically, these causes of action focused on Club's pre-filing demands, communications with Niska, and appearance before the CPUC to oppose Storage's application to increase its use of the reservoirs.

First, the causes of action for interference with contract rested on Club's pre-filing demands and attempts to enter into settlement negotiations with Storage. Section 425.16, subdivision (e), provides in part, an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under

15

consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."  "*Communications made in preparation for or in anticipation of the bringing of an action or other official proceeding fall within the ambit of these subdivisions.*  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs* ).)"  (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285, italics added.)  Storage's own argument in the trial court in opposition to the anti-SLAPP motion confirms these causes of action focused principally on protected activity.  Storage argued:  "Cortopassi's December 2009 and February 2010 letters reflect the Club's bad faith motivation, *which is the gravamen of Storage's Cross-Complaint.*"  (Italics added.)

Second, the causes of action for interference with contract both reallege that Club sent letters to the chief executive officer of Niska and the attorneys for the underwriters and insurers who participated in the public stock offering.  These letters were clearly litigation related as they were accompanied by a copy of Club's original complaint against Storage and asserted the claim that "Storage did not have a *legal* right under its Lease with Energy to expand the storage capacity of the reservoirs."  (Italics added.) Published decisions have taken a "fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16."  (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.)  The communications referenced by Storage in its cross-complaint appear to have been directly related to the subject of this litigation, and subject to section 425.16. (*Ibid.*; see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.)

Third, the causes of action for interference with contract focus on Club's participation in proceedings before the CPUC to prevent Storage from increasing its use of the underground reservoirs.  Specifically, Storage emphasizes Club filed an "opposition brief to Niska's pending application with the [CPUC] in which Storage sought approval to expand storage capacity of the Reservoirs as permitted by its Lease

16

with Energy."  Club's opposition to Storage's application before the CPUC constituted protected activity within the meaning of section 425.16.  "[C]ommunications to an official agency intended to induce the agency to initiate action are part of an 'official proceeding.' " (*Lee v. Fick* (2005) 135 Cal.App.4th 89, 96, quoting *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 732.)

However, we note the causes of action for interference with contract also rest on allegations that Club induced a breach of contract between Storage and Energy.  The alleged breach of contract does not implicate protected activity as defined by section 425.16.  For this conduct, "[t]he liability theory is the loss . . . allegedly caused by breach of contract . . . , rather than damages caused by any protected activity involving speech or petitioning the government." (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809 (*Wang*).)

Thus, Storage's causes of action for interference with contract incorporate allegations regarding protected and nonprotected activities by Club.  The trial court recognized as much when it indicated the anti-SLAPP was granted to the extent the cross-complaint was based on protected activity and denied insofar as it pertained to nonprotected activity.  However, the finding that the cross-complaint was based on allegations pertaining to protected and nonprotected activities should not have marked the end of the trial court's analysis.  "It is well-established that a plaintiff will not avoid the application of the anti-SLAPP statute by disguising the pleading as a 'garden variety' tort claim if the basis of the alleged liability is predicated on protected speech or conduct. (*Navellier, supra,* 29 Cal.4th 82, 90–92.)  Thus, 'a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one "cause of action." ' (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308.)" (*Wang, supra,* 153

17

Cal.App.4th at pp. 801-802.) If the gravamen of the complaint pertains to protected activity, the special motion to strike under section 425.16 is properly granted. (*Ibid.*)

The allegations concerning the protected activities by Club constitute the bulk of the focus of the cross-complaint and are the gravamen of Storage's causes of action for interference with contract. These causes of action seek damages for activities by Club, most of which are protected activity.

### 2. Cause of Action for Declaratory Relief

In contrast to Storage's causes of action for interference with the contract, its cause of action for declaratory relief focuses on a declaration of Club's rights under the surface rights addendum. Specifically, Storage seeks an adjudication of whether Club is an intended third-party beneficiary of the surface rights addendum, Club may sue to enforce any provision in the 1997 lease or the surface rights addendum, Club could receive rights under the surface rights addendum by assignment, and whether the conduct of Energy and Storage during the period between 1998 and 2009 informed Storage's rights to conduct its operations.

Both Club's and Storage's pleadings demonstrate an actual and present controversy regarding the extent of Club's rights –– if any –– under the surface rights addendum and the assignment of rights from Energy to Club. The question of whether Club has standing or may seek to enjoin Storage to abate its noise and operations is largely informed by whether it is an intended third-party beneficiary of the surface rights addendum. The parties' competing claims focus on the language of the surface rights addendum, which states, with certain exceptions, "no operations of any nature shall be allowed . . . which shall cause any noise, smoke, water vapor, or result in the construction of any structures, during a period commencing thirty (30) days prior to the opening of the annual Water Fowl Hunting Season . . . , and ending thirty (30) days after the closing thereof, (the 'Restricted Period'); excepting that the normal operation of meters,

18

pipelines, wellheads, water pumps, separators, tanks and other similar equipment, as required for routine gas storage operations, shall be allowed during the Restricted Period." The surface rights addendum further provides, "It is hereby acknowledged that the primary use of the surface of the Leased Premises is and shall be the hunting of water fowl. Prior to commencing any operations on the Operations Site . . . Lessee shall prepare a landscaping plan ('Plan') for said Operations Site. . . . Said Plan shall provide, among other things, for the construction of a berm surrounding the Operations Site, of sufficient height (but not less than three feet (3')) to conceal well heads and equipment. The berm shall be planted on its external side with native growth selected to grow to a maximum height, and having as its purpose maximum concealment and camouflage of the Operations Site, and noise suppression." These issues do not implicate protected activity.

The focus on the extent of Club's rights under the surface rights addendum and the validity of the assignment by Energy does not implicate or chill Club's right of petition. Significantly, Club itself seeks declaratory relief as to the same issues in its operative complaint. Club's complaint claimed that Energy executed a valid assignment of its leasehold rights under the surface rights addendum to Club, Club was an intended third-party beneficiary of the surface rights addendum, and Club had standing to enforce the provisions of the surface rights addendum to enforce noise restrictions against Storage.

The reciprocal nature of the relief requested by Storage and Club indicates the cause of action for declaratory relief survives under section 425.16. (See generally *City of Alhambra v. D'Ausilio*, *supra*, 193 Cal.App.4th at pp. 1307-1308 [declaratory relief cause of action not held to be subject to section 425.16 where it mirrored "nearly identical relief" requested by opposing party and did not focus on protected activity]; see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 [holding City's declaratory relief cause of action was not subject to being stricken under section 425.16 because it sought

19

determination of validity of ordinance rather than to chill right of petition].)  Because the request for declaratory relief does not implicate protected activity, the anti-SLAPP motion should have been denied as to this cause of action.

**D.**

***Probability of Success for the Interference with Contract Causes of Action***

Having determined the gravamen of Storage's causes of action for interference with contract arise out of protected activity, we must consider whether Storage demonstrated these causes of action have a probability of success.  To establish a probability of prevailing on a cause of action, " 'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Navellier, supra,* 29 Cal.4th at pp. 88–89, quoting *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)  In applying the second step of the anti-SLAPP test, we examine " 'the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)  Looking at those affidavits, '[w]e do not weigh credibility, nor do we evaluate the weight of the evidence.  Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law.' (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699–700.)  [¶]  . . .  [¶]  In the words of the Supreme Court, plaintiff needs to show only a 'minimum level of legal sufficiency and triability.' (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5.)  In the words of other courts, plaintiff needs to show only a case of 'minimal merit.' (See *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 675, quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 95.)" (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989.)

20

In support of its opposition to the anti-SLAPP motion, Storage introduced declarations by (1) Storage's counsel, Thomas Sanford, that recounted Club's opposition to an increase in Storage's use of the reservoirs and that authenticated the attached surface rights addendum between Energy and Storage, and (2) by Niska's chief executive officer, Simon Dupéré. The Dupéré declaration tracked Storage's theory of the case by stating: "This litigation has disrupted Storage's contractual relationship with Energy, in that Energy has attempted to partially assign the Lease to the Club in an effort to bestow standing on the Club so that it can sue Storage." The Dupéré declaration acknowledged "[t]he current litigation is very different from the substances of [Cortopassi]'s letters to me, since the current litigation only addresses alleged noise violations and does not seek 'reformation' of the Lease to include a limit on the size of the reservoirs we lease from Energy."

Notably, neither the declarations nor their attachments introduced by Storage contains any assertion that the 1997 lease or surface rights addendum disallowed Energy from assigning its rights under the addendum. Also, the declarations do not assert Storage's use of the reservoirs under the property was actually disrupted by Club's claims as a third-party beneficiary of the 1997 lease and surface rights addendum. Instead, the declarations show Storage believed it had been harmed by the very fact of having to respond to Club's communications and defend against Club's opposition before the CPUC and in court. The Dupéré declaration claims its "rights and reasonable expectations under the Lease have . . . been disrupted because Storage has had to expend considerable time, energy and money to defend this lawsuit as well as defend against the Club's opposition to Storage's application for expansion of its facility before [the CPUC]."

As we have noted, Storage's causes of action for interference with contract are founded on (1) pre-filing demands, (2) communicating about Club's third-party

21

beneficiary rights under the surface rights addendum, (3) proceedings before the CPUC, and (4) Energy's assignment of leasehold interests to Club.

The first two categories of conduct by Club were protected by the litigation privilege set forth in Civil Code section 47.[4] As the California Supreme Court has explained, " 'The principal purpose of [Civil Code] section 47[, subdivision (b),] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) Additionally, the privilege promotes effective judicial proceedings by encouraging ' "open channels of communication and the presentation of evidence" ' without the external threat of liability (*ibid.*), and 'by encouraging attorneys to zealously protect their clients' interests.' (*Id.* at p. 214.) 'Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result.' (*Ibid.*) [¶] To accomplish these objectives, the privilege is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360.)" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 321-322.) Clearly, Storage's cross-complaint does not allege malicious prosecution.

---

[4] Civil Code section 47, subdivision (b), states in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure."

Moreover, a review of Club's pre-filing demands, settlement negotiations, and operative complaint shows assertions of legal rights rather than intentional disruption of the contractual relationship between Storage and Energy. Indeed, Club's demands for payment and noise abatement as a third-party beneficiary of the lease agreement did not seek to disrupt that agreement. To the contrary, Club's assertion of rights as a third-party beneficiary sought to enforce rather than invalidate the lease agreement. (Cf. *Shell v. Schmidt* (1954) 126 Cal.App.2d 279, 290 [discussing circumstances under which third-party beneficiary may sue on contract].)

The third category of conduct in the interference with contract causes of action, i.e., Club's opposition before the CPUC to Storage's expanded use of the reservoirs, also did not undermine the validity of the lease.[5] This category of Club's communications is protected by the litigation privilege. (Civ. Code, § 47.) Club filed a protest with the CPUC that provided, in pertinent part: "In an action presently pending in the Butte County Superior Court, entitled *Wild Goose Club, Inc. vs. Wild Goose Storage, LLC, et al.* (Case No. 149934) (the 'Wild Goose Lawsuit'), [Club] alleges, among other things, that [Storage] has breached the environmental restrictions in the surface rights lease under which it purports to operate the 8.5 acre Well Pad Site, and that [Storage] is not entitled to expand its operations on the Well Pad Site to accommodate the proposed increase in its storage operations from 29 bcf to 49 bcf. A true copy of the complaint filed in the Wild Goose Lawsuit is attached as Exhibit A." The remainder of Club's protest reiterated the allegations set forth in the operative complaint. Club's communication with the CPUC was directly related to its claims in the lawsuit and sought to hold Storage to the terms of the 1997 lease and surface rights addendum.

---

[5] The CPUC approved Niska's application to expand the storage capacity of the reservoirs.

23

Consequently, Club's protest is protected by the litigation privilege and not subject to the tort causes of action brought in Storage's cross-complaint. (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 321-322 [litigation privilege applies to statements communicating demands made in underlying lawsuit].) In addition, Club's protest does not seek to disrupt the contractual relationship between Storage and Energy.

The final category of conduct alleged by Storage to have been wrongful was Club's receipt of an assignment of rights under the surface rights addendum from Energy. Storage's cross-complaint and arguments in opposition to the anti-SLAPP motion rest on the assumption that Club interfered with the contractual relationship by securing the assignment of rights from Energy. However, it is well established that "[t]he law generally favors free alienability of property, and California follows the common law rule that a leasehold interest is freely alienable. (See *Kassan v. Stout* (1973) 9 Cal.3d 39, 43; 49 Am.Jur.2d, Landlord and Tenant, § 398 (1980).)" (*Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 494.) Granted, restriction on the alienability of leasehold interests is not wholly prohibited. (*Ibid.*) However, the "common law's hostility toward restraints on alienation has caused such restraints on leasehold interests to be strictly construed against the lessor." (*Ibid.*) Thus, even in cases in which a lease has a term prohibiting assignment except by prior consent of the lessor, "such consent may be withheld *only where the lessor has a commercially reasonable objection to the assignment,* even in the absence of a provision in the lease stating that consent to assignment will not be unreasonably withheld." (*Id.* at p. 496.)

Storage's cross-complaint and declarations in support of its opposition to the anti-SLAPP motion do not allege or identify any purported restriction on leasehold rights in the 1997 lease or the surface rights addendum. And, Storage offers no authority in support of the proposition Club or Energy could act tortiously in assigning rights under the surface rights addendum. Thus, Storage's allegations about Club's wrongful motive

24

in seeking a partial assignment of the leasehold rights do not affect Energy's assignment of leasehold interests to Club.

In sum, the cross-complaint's causes of action for interference with contract do not have sufficient merit to avoid being stricken under section 425.16. Accordingly, we conclude the anti-SLAPP motion should have been granted as to Storage's causes of action for interference with contract and conspiracy to interfere with contract.

## II

### *Attorney Fees*

Storage challenges the award of attorney fees to Club after the trial court granted the anti-SLAPP motion in part. The determination of which party prevailed on an anti-SLAPP motion lies within the discretion of the trial court. (*Mann v. Quality Old Time Service, Inc*. (2006) 139 Cal.App.4th 328, 340.) Here, the trial court awarded fees based on an order we vacate because we cannot ascertain the extent to which it granted or denied the special motion to strike. In effect, our conclusion that the trial court erred in ruling on the anti-SLAPP motion compels us to vacate the fees awarded under section 425.16. (See *Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 639.)

## DISPOSITION

The order granting in part and denying in part the anti-SLAPP motion and the order awarding attorney fees to Wild Goose Club, Inc., for bringing the anti-SLAPP motion are vacated. On remand, the trial court shall enter a new order (1) granting the special motion to strike as to the causes of action for intentional interference with contract and conspiracy to interfere with contract, and (2) denying the motion as to the cause of action for declaratory relief. The trial court shall also consider the extent to which any of the parties may recover attorney fees and costs for bringing or defending

25

against the special motion to strike.  Wild Goose Club, Inc., shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                                         _____HOCH_____, J.


We concur:


_____NICHOLSON_____, Acting P. J.


_____BUTZ_____, J.